**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Gary E. HANSEN, Daniel E. Means, aka Daniel E. Johnson, and Stephen R. Bryant, Defendants-Appellees.**

**Nos. 79–1642 to 79–1644.**

United States Court of Appeals, Tenth Circuit.

Supplemental Briefing Submitted Oct. 16, 1980.*

Decided July 8, 1981.

Rehearing Denied in No. 79–1643 Aug. 13, 1981.

* Decision of these appeals was withheld for the Supreme Court's opinions in *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 and *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 and supplemental briefs thereon.

Katherine Winfree, Dept. of Justice, Washington, D. C. (Robert J. Erickson, Dept. of Justice, Washington, D. C., Joseph F. Dolan, U. S. Atty., and Charles L. Casteel, Asst. U. S. Atty., Denver, Colo., were with her on the brief), for plaintiff-appellant.

Kenneth A. Senn, Denver, Colo., on the brief for defendant-appellee Gary E. Hansen.

James M. Smith, Denver, Colo., for defendant-appellee Daniel E. Means.

Stanley J. Walter, Denver, Colo., for defendant-appellee Stephen R. Bryant.

Before HOLLOWAY, DOYLE and LOGAN, Circuit Judges.

HOLLOWAY, Circuit Judge.

This case involves an appeal by the Government pursuant to 18 U.S.C. § 3731 from an order suppressing evidence as to the three named defendants, Gary E. Hansen, Daniel E. Means, and Stephen R. Bryant. Hansen, Means and Bryant, along with two other persons,[1] were charged with conspiracy to distribute and to possess with intent to distribute cocaine and marijuana in violation of 21 U.S.C. § 846.

Defendant Hansen was charged with an additional count of possession with intent to distribute cocaine in violation of 21 U.S.C.

---

1. The two additional defendants, John D. Thomas and Richard W. Klatt, also prevailed on motions to suppress. However the Government dismissed the conspiracy count as to these defendants and they are not parties to this appeal.

§ 841(a)(1) and 18 U.S.C. § 2 and Means was charged with two additional counts of possession with intent to distribute cocaine. Prior to trial, these three defendants moved to suppress all evidence seized during searches of their respective hotel rooms and persons. After an evidentiary hearing the district court granted all motions to suppress. (III R.400–404). This appeal followed.

On appeal, the Government does not contest the illegality of the search of defendant Hansen's motel room and the resultant suppression of evidence seized in that room with respect to its use against defendant Hansen. (Brief of Government, p. 24 n. 31). It does argue three main propositions: (1) that defendants do not have standing to contest the validity of any of the searches except those of their own motel rooms and persons; (2) that the court erred in suppressing the evidence seized from defendant Means's motel room; and (3) that the court erred in suppressing evidence seized during personal searches of defendants Means and Bryant. A brief recitation of the facts will furnish a convenient background.

After learning from John D. Thomas and Richard W. Klatt that a cocaine delivery would be made by a "source" arriving from Florida at a motel near the Denver airport on March 16, 1979, Drug Enforcement Administration (DEA) agents followed Thomas and Klatt to the Skyways Inn Motel in Denver. There they observed Thomas enter a room within a block of rooms numbered 240 through 244. He left the room carrying a small green bag, returned to the car, and drove with Klatt to a nearby restaurant where a cocaine sale was made to an undercover agent. Klatt and Thomas were immediately arrested.

Four agents then returned to the motel and determined that although no one from Florida had checked into the motel, three men from Montana, Thomas's home state, had checked into rooms 241, 242 and 243. The agents then went to these rooms and received no response after knocking on the doors of rooms 242 and 243. The door of room 241 was opened by defendant Hansen.

The agents entered the room and seized plastic bags containing rice, a piece of paper with the undercover agent's telephone number on it, a small quantity of hashish found inside Hansen's coat pocket, an airline ticket, and a key to room 242.

The agents also noticed that Hansen, who was not wearing a shirt, had tape marks across his back which, according to the agents, indicated that he may have taped bags of drugs to his body. The agents maintained that Hansen consented to their entry into his room and consented to a search of the room although he refused to sign written consent forms. Hansen denied that he consented either to their entry or to their search.

Two of the agents then left room 241 and purportedly looked through partially opened drapes into room 242 where they observed plastic bags containing a white powder. The agents then decided to detain Hansen and to seek a search warrant for room 242. Hansen was taken to the motel lobby where defendants Means and Bryant were encountered. A motel employee verified that Means was registered in room 242 and Bryant was registered in room 243. Hansen, Means and Bryant were then detained for approximately four hours until the search warrant was obtained.

After the warrant was obtained, Hansen and Bryant were taken to room 241 and Means to room 242. Room 242 was searched and bags containing cocaine were found. All three men were then formally arrested. The agents then announced their intention to search Means and he responded by removing several plastic bags of cocaine from his boots. Bryant was thereafter searched in room 241 and more than $30,000 was found inside his socks and under his trousers.

In addition to Hansen's denial that he consented to any searches, testimony presented by various defense witnesses indicated that the curtains in room 242 were closed, and that Means and Bryant were detained several hours before being advised of their rights. A motel employee also testified that when he was going to room 243

in response to a complaint from a nearby room that the television in that room was too loud, one of the DEA agents asked him to look for a black briefcase while he was in the room. He reported back to the agent that no briefcase was seen.[1a] This search was subsequent to the search of room 241 and prior to the search of room 242, but it was not established that the search of room 243 was prior to the alleged observation of the drugs in room 242.

## I

### DEFENDANTS' RIGHT TO CHALLENGE THE SEARCHES AND SEIZURES

(a) *The contentions of the parties and the district court's ruling*

■ One seriously contested issue on appeal is that of defendants' "standing"[2] to claim Fourth Amendment violations. Although the Government did not raise the issue of standing in the district court, both sides argued the issue on appeal. As suggested to us, we awaited the decisions by the Supreme Court in *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633, and *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619. Supplemental briefs discussing *Rawlings* and *Salvucci* have subsequently been filed.

■ The Government contends that any claim by the defendants of "automatic standing" is no longer tenable in light of *Salvucci* and that the "automatic standing" rule of *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, has been abandoned. (Supplemental Brief of the Government at 6). We agree that *Salvucci* abandoned the "automatic standing" rule of *Jones* and need not treat defendants' argu-

ments on the applicability of the rule to this case.

The Government further says that the district court erroneously suppressed as to all defendants all evidence seized in the searches of motel rooms 241 and 242 and in the personal searches of Hansen, Means and Bryant. It argues that this ruling was contrary to accepted principles regarding standing to contest alleged Fourth Amendment violations. According to the Government, a party seeking to suppress evidence on Fourth Amendment grounds must affirmatively demonstrate that he had a legitimate expectation of privacy in the area searched or a possessory or proprietary interest in the evidence seized. (Brief of the Government 13–15). It says that none of the defendants claimed any possessory or proprietary interest in any of the items seized, nor did they demonstrate a legitimate expectation of privacy in the motel rooms in which the other defendants were registered. Because the burden of establishing such interests is on the defendants, the Government says that their failure to do so precludes the remedy of suppression. (Supplemental Brief of the Government 3–4).

The Government also contends that it is entitled to raise this issue on appeal in spite of this court's decision in *United States v. Ford*, 525 F.2d 1308 (10th Cir.), in which we declined to consider the issue of standing because the Government had not raised the issue in the district court. It argues that subsequent to *Ford* the Supreme Court in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387, made clear that standing is not a separate issue distinct from the substantive Fourth Amendment claim. Consequently, the defendants' failure to establish standing constitutes a failure to meet their

---

1a. No evidence from Bryant's room 243 is in question on this appeal. Although the search of his room was unlawful, the only question raised by this fact is whether the unlawful search required suppression of any evidence under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, a question discussed in Part II(c), *infra*.

2. We recognize that "standing" is no longer a separate issue and that the relevant inquiry now focuses on the substance of defendant's claim that he possessed a "legitimate expectation of privacy" in the area searched. *Rawlings v. Kentucky*, 448 U.S. 98, 99, 100 S.Ct. 2556, 2558, 65 L.Ed.2d 633. We do use the term in this opinion where necessary to refer to arguments by the parties phrased in terms of "standing."

burden of showing that their Fourth Amendment rights were violated. (Supplemental Brief of the Government 4–5). The Government adds that in any case, standing is a question of law that may be raised for the first time on appeal. (Brief of Government, 13 n. 1 and Supplemental Brief 5).

Defendant Hansen responds that under *Salvucci* and *Rawlings* he is entitled to claim the benefits of the exclusionary rule if his own Fourth Amendment rights, as demonstrated by a possessory interest in the item seized and a reasonable expectation of privacy in the area searched, were violated. Hansen says that even the Government does not contest the finding that his Fourth Amendment rights were violated. Therefore, Hansen says that because the search of his motel room (room 241) and of his person were illegal, the court correctly applied the principles of *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, and suppressed as to him all evidence gained after the first illegal searches as fruits of the poisonous tree. (Brief of Defendant Hansen 3–5; Supplemental Brief of Defendant Hansen 3–5).

Defendant Means says that the Government concedes that he is able to challenge the search and seizure of cocaine from his person and the motel room in which he was registered (room 242). Further, he argues that he had an expectation of privacy with respect to the entire "block of rooms" registered to Hansen, Means and Bryant, *i. e.*, rooms 241, 242 and 243. He reasons that actions taken by the Government agents support this view. According to Means, the Government agents were interested in "parties from Montana" in three motel rooms. Rather than looking for a particular individual or individual occupant, Means says that the Government treated the rooms as a block in commencing "an exploratory search by process of elimination." Because the Government treated the three rooms as one and the same for purposes of the exploratory search, Means argues that he had an expectation of privacy with respect to all three rooms. (Brief of Defendant Means 7–9; Supplemental Brief of Defendant Means 1–4).

Means alternatively argues that he is entitled to challenge items seized from co-defendant Hansen's room on the ground that he had a possessory or proprietary interest in the items seized. He says that a key to his motel room was found in Hansen's room, in which key Hansen denied any claim of ownership. (Brief of Defendant Means, 8–9). Means also contends that the search of his room, 242, was illegal because it was tainted by the prior illegal search of room 241 in which a key to room 242 was found. Hence, Means says that under the principles of *Wong Sun* the evidence found in room 242 must be suppressed. (Brief of Defendant Means 9–12).

Defendant Bryant maintains that because the Government did not raise the issue of standing in the district court, it is not an issue on appeal. He further says that because the first search of room 241 was illegal, all evidence seized thereafter was properly suppressed under *Wong Sun*. Bryant argues that evidence seized from the search of his person was properly suppressed because the police had no probable cause to arrest him. Bryant contends that such a situation is governed by *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824, which holds that evidence obtained under such circumstances is inadmissible under the Fourth Amendment, even where Fifth and Sixth Amendment protections have been afforded. (Brief of Defendant Bryant 6–10; Supplemental Brief of Defendant Bryant 1).

Although the record is somewhat unclear, the Government's position seems correct that the court suppressed as to all three defendants all evidence obtained from the searches and seizures in question. The court's comments and findings were not related specifically to individual defendants but rather to the particular searches.[3] Af-

---

3. For example, in discussing the search of Hansen and his room, 241, the court said (III R.402):

Mr. Hansen wasn't even frisked at the time, and the testimony is absurd. It's to the

ter the court suppressed all evidence found in rooms 241 and 242 and on the persons of Hansen, Means and Bryant, counsel for Mr. Klatt inquired (III R.406):

> The motion to suppress, of course, would go to my client also, Mr. Klatt; is that my understanding?
>
> THE COURT: Sure. It's suppressed. This is a conspiracy case.

### (b) The claim that the Government waived the standing issue

It is true, as defendants argue, that the Government did not make any challenge in the district court to their "standing." Where such a challenge was not made the Supreme Court has remanded the case for further hearings on the issue. *E. g., Combs v. United States,* 408 U.S. 224, 92 S.Ct. 2284, 33 L.Ed.2d 308. This court has held that the issue was waived in such a case and could not be raised on appeal. *See United States v. Ford,* 525 F.2d 1308 (10th Cir.).[4] However, the "proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois,* 439 U.S. 128, 131 n.

contrary, and I expressly reject it and, because of that, all statements are suppressed and all evidence seized in room 241 are suppressed. I believe *Wong Sun* applies and the rest of the search is tainted.

With respect to room 242, Means's room, the court explained its two views on the unlawfulness of that search (*i. e.* that the affidavit for search warrant was partly false, and that *Wong Sun* also required suppression, as follows) (*id.* at 404):

> The totality of the circumstances here, too, persuades me that these drugs were not in plain view; but even if they were—I find they were not, but even if they were, the room was in the control of agents based upon the receipt of the key; ...
>
> \* \* \* \* \* \*
>
> ... [S]econdly, the key to that particular room 242 was in the possession of the agents prior to that time and was subject to their control and was, in my view, obtained through the fruit of the illegal search of room 241 and, hence, the evidence obtained in room 242 is suppressed as well.

In addition, the court suppressed all statements made by Means and Bryant as well as any evidence found in the search of their persons (*id.* at 402–03):

1, 99 S.Ct. 421, 423 n. 1, 58 L.Ed.2d 387; *United States v. Rios,* 611 F.2d 1335, 1343 (10th Cir.). As stated in *United States v. Miller,* 636 F.2d 850, 853–54 (1st Cir.):

> But "[t]here may always be exceptional cases or particular circumstances which prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court ... below." [*Hormel v. Helvering,* 312 U.S. 552] at 557, 61 S.Ct. [719] at 721 [85 L.Ed. 1037]. In light of *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)—which was law when this case was tried—this case presents "particular circumstances" justifying consideration of whether Miller has standing to pursue his Fourth Amendment claim. *Rakas* stated that "[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." 439 U.S. at 131 n. 1, 99 S.Ct. at 423 n.1. It also established that the "Court's long history of insistence that Fourth Amendment rights are personal in

> With respect to the defendants Bryant and Means, they were under arrest—unlike Napoleon at Elba, they were under arrest from the time that agents contacted them and they returned to the motel and were held in the lobby and escorted to and from the toilet facilities; and there was an unreasonable, unconscionable, and unnecessary delay in the advisement of their rights.
>
> The government has said it intends to solicit no testimony concerning that and, indeed, in the trial it shall not because that and any statements obtained or any items obtained in search of their persons is suppressed.
>
> As we note later, although the trial court referred to the suppression of statements, no statements by these defendants are in issue.

4. We do not view the *Ford* opinion as a blanket rule barring the raising of the standing issue in *every case* where the Government did not assert it in the district court. *Ford* referred to the general rule that "[o]rdinarily, an appellate court will not take note of contentions not raised in the trial court..." and there found no compelling reason to deviate from the general rule. 525 F.2d at 1310. Here, for reasons which follow, we conclude that we should consider the issue.

nature has already answered many . . . traditional standing inquiries and . . . that definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than that of standing." *Id.* at 140, 99 S.Ct. at 428. Miller thus cannot complain that he is "surprised on appeal by final decision [here] of issues upon which [he has] had no opportunity to introduce evidence." *Hormel,* 312 U.S. at 556, 61 S.Ct. at 721. Miller had the burden of establishing the scope of his personal Fourth Amendment rights. The failure to raise that standing issue was his failure, not the government's. *See also Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561–62, 65 L.Ed.2d 633 (June 25, 1980); *United States v. Goshorn,* 628 F.2d 697 (1st Cir. 1980). . .

We recognize that the Supreme Court has very recently refused to consider a claim by the Government that petitioner lacked an expectation of privacy in the place searched sufficient to prevail on his Fourth Amendment claim because the Government did not raise the issue in the district court or the court of appeals. *See Steagald v. United States,* —— U.S. ——, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). However in *Steagald,* the Government had argued in the courts below that petitioner's connection with the searched home was sufficient to establish constructive possession of cocaine found in the home. *Id.* at ——, 101 S.Ct. at 1646. And in its opposition to certiorari the Government expressly represented that the home belonged to petitioner. *Id.* Under these circumstances the Court stated, *id.* at ——, 101 S.Ct. at 1646 and 1647:

> However, the Government now contends that the record does not clearly show that petitioner had a reasonable

expectation of privacy in the house, and hence urges us to remand the case to the District Court for re-examination of this factual question.

We decline to follow the suggested disposition. Aside from arguing that a search warrant was not constitutionally required, the Government was initially entitled to defend against petitioner's charge of an unlawful search by asserting that petitioner lacked a reasonable expectation of privacy in the searched home, or that he consented to the search, or that exigent circumstances justified the entry. The Government, however, may lose its right to raise factual issues of this sort before this Court when it has made contrary assertions in the courts below, when it has acquiesced in contrary findings by those courts, or when it has failed to raise such questions in a timely fashion during the litigation.

\* \* \* \* \* \*

. . . We conclude, however, that the Government through its assertions, concessions, and acquiescence, has lost its right to challenge petitioner's assertion that he possessed a legitimate expectation of privacy in the searched home. We therefore turn to the merits of petitioner's claim.

■ We feel that the instant case is distinguishable from *Steagald.* The Government has not made assertions in the district court contrary to its present challenge to defendants' standing. Moreover, challenges to the searches as made by defendants were somewhat confusing so that we feel we should not hold that the Government waived its right to argue the "standing" question.[5] *Rakas* was decided three months

---

5. Hansen, Means and Bryant each filed separate motions to suppress, seeking suppression of evidence seized in any searches of the particular room registered to him and of evidence which was seized from his person. Thus, Hansen moved to suppress evidence seized from him and from room 241 (I R. 1–3); Bryant moved to suppress evidence seized from him and from the search of room 243 (I R. 4–5), and Means moved to suppress evidence seized from

him and from room 242 (I R. 8–10, 25–27). Bryant also filed a notice of joinder notifying the United States Attorney of "his intention to join in all motions and arguments as filed by all other counsel on behalf of other defendants above-named as the same may relate and be applicable to defendant, STEPHEN R. BRYANT." The Government's reply brief (p. 3, n.2) indicates that Hansen filed a notice of

before the incidents involved here, and the subsequent filing of the motions to suppress, giving notice of the principle that the expectation of privacy is an element of the movant's position. As noted, the motions to suppress did not give clear notice that defendants were contesting other than the searches of their own persons and of rooms registered to each individual. In these circumstances we do not feel it fair to impose a waiver sanction on the Government.

■ Nor do we feel that this case should be remanded to the district court for further proceedings on this issue as was done in *Combs v. United States*, 408 U.S. 224, 92 S.Ct. 2284, 33 L.Ed.2d 308. The record in the instant case is not "virtually barren of the facts necessary to determine" (*id.* at 227, 92 S.Ct. at 2286) whether the individual defendants' own Fourth Amendment rights were violated by the various searches and seizures. And the defendants have not argued that there are further facts to develop if we decide the standing issue.

Accordingly we decline to hold that the Government is precluded by waiver of this issue and we turn to an examination of the various searches and seizures to determine which defendants may contest them.

### (c) The right to challenge the search of room 241

■ As noted, the search of defendant Hansen and room 241 where he was registered was the first to take place. The Government concedes that each defendant clearly may challenge the search of his own

person and motel room and the seizure of evidence from such searches. (Brief of Government, 13, 15–17). Thus we need only examine Means's and Bryant's rights to challenge the search of Hansen's room,[6] and to seek suppression of evidence found there.

*First*, Means relies on two main arguments to demonstrate that his Fourth Amendment rights were violated by the search of room 241. He says that he had an expectation of privacy with respect to all three rooms—241, 242 and 243—as a block of rooms. He reasons that the Government was not looking for a particular individual but concentrated on the three rooms as a group. He maintains that because the rooms were treated as the same for the purposes of an "exploratory search", it follows that he had an expectation of privacy with respect to all three rooms. (Supplemental Brief of Means, 2–4). Means also argues that he can challenge items seized from room 241 because he had a possessory or proprietary interest in the items seized. Although Means apparently makes this statement with respect to all items seized, the only specific mention made of a possessory interest was directed to the key to room 242, Means's room. (Brief of Appellant Means, 7–9).

■ Means's first argument is similar to the "target" theory rejected in *Rakas, supra*, 439 U.S. at 132–38, 99 S.Ct. at 424–28. The fact that the search was "directed"

---

joinder similar to Bryant's, which is not included in the record on appeal.

During the course of the suppression hearing, Hansen specifically disclaimed any interest in room 242, saying he told a DEA agent that he wouldn't open the door to room 242 because "I wasn't assigned for that room and it didn't belong to me; if they wanted someone to open it, they would have to find the person that belonged to that room." (III R. 267). While *Means and Bryant* each testified, neither claimed any interest in motel rooms other than the one to which each was registered, nor in property seized from any other individual.

However, in arguments to the court at the close of the suppression hearing, counsel for the various defendants made contentions with respect to many of the searches and seizures

which do appear to give notice to the Government that the separate individuals were contesting searches other than those raised by their individual motions to suppress. Hansen's counsel first addressed the search of Hansen and room 241 and then argued that this search led to the subsequent searches of rooms 242 and 243. Bryant's counsel addressed the detention and search of Bryant, the search of Bryant's room 243 and the search of room 242. Means's counsel addressed the searches of rooms 241 and 243 as they related to the subsequent search of room 242, the room registered to Means.

**6.** The rights of the defendants to challenge the search of Hansen's person are discussed in Part I (e), *infra*.

at all three defendants and that the agents were suspicious of all three rooms is not enough to establish that Means's own Fourth Amendment rights were violated by the search of Hansen's room 241. Nor can we accept Means's alternative proposition that he had a possessory interest in the items seized from room 241. Means mentions the key to room 242 as the only specific item in which he had a possessory interest. As the Court held in *Rawlings v. Kentucky*, 448 U.S. 98, 104–106, 100 S.Ct. 2556, 2561–2562, 65 L.Ed.2d 633 while Means's ownership would be one factor to consider, concepts of property law do not determine the scope of Fourth Amendment protections. Instead, the relevant inquiry is whether Means possessed a legitimate expectation of privacy in the area searched. *Id.* at 106, 100 S.Ct. at 2562. Assuming that Means had an ownership or possessory interest in the key, there is no indication that he took any precautions to maintain his privacy to the key. It was found in a room from which he demonstrated no right to exclude others. Since Means has not shown that his reasonable expectations of privacy were violated by the search of Hansen's room 241, we hold that Means cannot challenge that search or the seizure of the key to his room, 242.[6a]

■ *Second,* Bryant does not assert on appeal that he had a reasonable expectation of privacy with respect to Hansen's room 241 and its contents and says only that the Government has waived the standing issue. (Brief of Appellant Bryant, 6; Supplemen-tal Brief of Appellant Bryant, 1). No evidence was introduced at the suppression hearing that Bryant had any control over room 241 or that he had any possessory interest in the items seized from that room. The record actually indicates that Bryant did not have a possessory interest in room 241 since the room was registered to someone else and Bryant had another room registered to him. Thus we hold that Bryant may not object to this search.

In sum, Hansen may challenge the search of his room, 241, and Means and Bryant may not do so.

(d) *The right to challenge the search of room 242*

The Government concedes Means's Fourth Amendment right to challenge the search of room 242 in which he was registered. Thus we turn to Bryant's and Hansen's expectations of privacy with respect to that room.

■ We conclude that Hansen has no right to object to the search of room 242.[7] He demonstrated no expectation of privacy in that room. He does say that the district court must have found that he had a possessory interest in the evidence discovered in room 241, including the key to room 242. (Supplemental Brief of Hansen, 2). However, even assuming that there was such an implicit finding, it would have no basis in the record in light of Hansen's own testimony.[8] Moreover, Bryant has asserted no privacy interest as to room 242.

---

**6a.** This is not to say that Means abandoned any right to privacy in room 242 itself by his actions with respect to the key. As we hold below, he showed an expectation of privacy to his room and we uphold his claim of unlawful search of his room, 242.

**7.** This is not to say that Hansen or either of the other defendants may not contest a search subsequent to a search of an area in which he had a reasonable expectation of privacy under the theory that the subsequent search was tainted by the prior illegal search, *i. e.*, the fruit of the poisonous tree theory. *See Wong Sun v. United States*, 371 U.S. 471, 491–92, 83 S.Ct. 407, 419–20, 9 L.Ed.2d 441. Such contentions will be discussed in Part II, *infra.* However, it must first be determined which defendants had Fourth Amendment rights invaded by various searches and seizures before addressing the issue of whether subsequent searches were tainted under the theory of *Wong Sun.*

**8.** Hansen testified that, in response to a request by one of the DEA agents to open room 242 for him, he had replied (III R. 267):

> I told him no, that I wouldn't, I wasn't assigned for that room and it didn't belong to me; if they wanted someone to open it, they would have to find the person that belonged to that room.

Hansen also testified that the key belonged to Means. (Id. at 266). We feel this evidence conclusively establishes that Hansen did not have a legitimate expectation of privacy in room 242.

In sum, only Means may challenge the search of his room—room 242—and Hansen and Bryant have no right to do so.

(e) *The right to challenge the body searches of Hansen, Means and Bryant*

 None of the defendants argues that he had a reasonable expectation of privacy as to the person of any co-defendant, nor do we feel that such a claim is tenable. *See United States v. Baucom*, 611 F.2d 253 (8th Cir.); *United States v. Thomann*, 609 F.2d 560 (1st Cir.); *United States v. York*, 578 F.2d 1036 (5th Cir.), *cert. denied*, 439 U.S. 1005, 99 S.Ct. 619, 58 L.Ed.2d 682. Thus, we conclude that each defendant may object only to the search of his person as well as his room. We turn to an examination of the legality of the searches in that context.

## II

### THE LAWFULNESS OF THE SEARCHES AND SEIZURES

a. *The search of room 241 and defendant Hansen's person*

 The first search which occurred was that of Hansen's room 241 and defendant Hansen's person. The court suppressed the evidence found in this search on the ground that there was no consent to the search, as the Government originally maintained. On appeal, however, the Government does not challenge this ruling. (Brief for the United States, p. 24, n.31). We sustain the ruling and hold that this evidence was properly suppressed as to defendant Hansen. However, since Means's and Bryant's own Fourth Amendment rights were not violated by this search, the evidence obtained in the search of room 241 and Hansen's person should not be suppressed as to Means and Bryant.

b. *The search of room 242*

As noted, Means's room 242 was searched after room 241. The Government's version of the facts is that, after the search of room 241, two agents left this room and from the outside terrace looked into room 242 through a small opening in the drapes. They observed plastic bags filled with a white powder on a table under a light that was on. Several pictures of room 242 were taken by an agent through the opening in the drapes.[9] One of the agents then left to attempt to obtain a search warrant. (Brief of Government 6–8; II R. 42–43, 67, 126–27).

The affidavit for the search warrant indicated that a DEA agent learned from John Thomas that Thomas's source of cocaine would be arriving from Florida with a quantity of cocaine, that Thomas and Richard Klatt were to pick up the cocaine from the source at a motel near the airport, and that Thomas and Klatt were followed to the motel where Hansen, Means, and Bryant were staying and Thomas was observed in the vicinity of rooms 240–244. Thomas subsequently sold some cocaine to an undercover agent and told him that the source had an additional 1¾ pounds of cocaine in the motel room. The affidavit stated that three men from Thomas's home state had recently registered at the motel in rooms 241, 242 and 243, and that the DEA agent had walked by room 242 and observed through partially open drapes one large and three small plastic bags containing a white powder. (IV R. Ex 5). The search warrant was issued, the room searched, and several plastic bags containing cocaine were found. (II R. 68, 127–28).

Testimony by defendant Means and two hotel clerks indicated that the drapes to room 242 were closed and that there were no lights on in the room. (III R. 296–99; 312, 328–29, 337–38, 345–47).

**9.** The objection to the admissibility of the one photograph offered was sustained at the suppression hearing on the grounds that the picture was not a true and accurate representation of the scene due to the wide angle lens and speed at which the picture was shot, and the agent's own testimony that the picture showed more than he actually saw. (II R. 65–66). As stated later, we find no error in this ruling.

The district court suppressed the evidence from Means's room 242 on two grounds. It first found Means's testimony as to the position of the drapes and the lighting to be credible, chiefly because it was corroborated by two disinterested witnesses. The court found that the drugs in room 242 were not in plain view and therefore the statement in the affidavit to that effect was false. It alternatively held that this information was the fruit of the illegal search of room 241 and therefore should be suppressed. It reasoned that the key to room 242 was obtained through the illegal search of 241 and therefore the room itself was under the control of the agents. Hence, even if the drugs were in plain view in room 242, they were noticed only as a result of the illegal search of room 241. (III R. 402–404).

The Government argues that the court abused its discretion by not admitting the photograph and that its findings with respect to the search of 242 were clearly erroneous. It says that the agent's testimony regarding a crack in the drapes was not squarely contradicted by any of the defense witnesses. Finally, the Government contends that even if it is determined that the drugs in room 242 were not in plain view, the information remaining in the search warrant was sufficient to establish probable cause to search the room.

■ We find no error in the exclusion of the photograph. The admission of such evidence is committed to the sound discretion of the trial judge and we find no abuse of discretion in the ruling. *See United States v. Shoemaker*, 542 F.2d 561, 564 (10th Cir.), *cert. denied*, 429 U.S. 1004, 97 S.Ct. 527, 50 L.Ed.2d 616. Moreover the finding that the drugs were not in plain view implicates the credibility of witnesses, the weight to be given to their testimony, and the drawing of inferences—matters largely left to the trial judge. *United States v. Axselle*, 604 F.2d 1330, 1335 (10th Cir.). We cannot say the findings were clearly erroneous. *United States v. Coker*, 599 F.2d 950, 951 (10th Cir.). A necessary consequence of the finding that the drugs were not in plain view is the excision of the

statement to that effect in the affidavit as false. *See Franks v. Delaware*, 438 U.S. 154, 156, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667.

■ To establish probable cause the remainder of the affidavit must contain sufficient facts to enable a reasonably prudent person to believe that a search of the described premises would uncover evidence of a crime. *United States v. Burns*, 624 F.2d 95, 99 (10th Cir.), *cert. denied*, 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219; *United States v. Neal*, 500 F.2d 305 (10th Cir.). We conclude that the remaining facts are insufficient to establish probable cause to search any of the three rooms, including Means's room 242.

The affidavit states that Thomas was expecting a source to arrive from Florida, as opposed to three sources arriving from Montana. Although Thomas was clearly linked to the cocaine and to the motel in the vicinity of these three rooms, we cannot agree that the evidence was sufficient to justify searches of three separate rooms. Probable cause was not adequately shown since there was no showing that one individual registered for the entire block of rooms, or that the three rooms had inner connecting doors, thus making the rooms in essence one area. *United States v. Hinton*, 219 F.2d 324, 325–26 (7th Cir.). Nor was there a showing in the affidavit that Thomas entered or exited from any of the five rooms mentioned in the affidavit, which merely stated that Thomas was observed "later walking in the vicinity of a series of rooms on the second floor of the motel bearing the numbers 240 through 244."

We must hold that the remainder of the affidavit—the document on which probable cause for the search warrant depended—did not lawfully support the warrant for the search of room 242. Therefore the evidence seized in room 242 was properly suppressed as to defendant Means, who was registered in that room.

■ There remains the question whether the evidence seized in room 242 should be suppressed as to Hansen and Bryant be-

cause of the illegality of the prior search of Hansen's room 241 and the application of *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. Bryant may not rely on this theory because he had no expectation of privacy as to room 241 and thus cannot urge this basis to exclude the evidence from 242. Hansen, however, had such an interest and may invoke the theory, which was one articulated by the trial judge.

We must determine whether, granting establishment of the primary illegality in the search of room 241, the evidence from room 242 was "come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun, supra,* 371 U.S. at 488, 83 S.Ct. at 417; *see United States v. Villano,* 529 F.2d 1046, 1059 (10th Cir.), *cert. denied,* 426 U.S. 953, 96 S.Ct. 3180, 49 L.Ed. 1193. We have held that the record supports the finding that the drugs in Means's room 242 were not in plain view, and hence that source of information cannot be viewed as an independent source. On the other hand, the agents had found several most significant items by the search of Hansen's room 241—the evidence of the agent's phone number on a slip of paper, the airline ticket to Florida, baggies containing rice (which the agents knew was useful in the storing of drugs) tape marks on Hansen's body (which they believed to be evidence that Hansen had taped narcotics to his body), and a key to Means's room 242. Since they had not found the narcotics in Hansen's room 241 with this other evidence, and since they had the key pointing to Means's room 242, we must agree that the evidence then seized in room 242 was come upon by exploitation of the illegal search of Hansen's room 241 and not because of an independent source of information.

█ In sum, as to Hansen the evidence obtained in Means's room 242 was properly suppressed under *Wong Sun*; as to Means it was properly suppressed because the search of his own room—242—was unlawful; but as to Bryant, who cannot complain of the search of Hansen's room 241 and thus

invoke the *Wong Sun* theory, the suppression of evidence from Means's room 242 was in error.

### c. The body searches of Means and Bryant

After the Government agents searched Hansen's room 241 and defendant Hansen's person and made the decision to seek a search warrant for Means's room 242, they took defendant Hansen to the motel lobby where defendants Means and Bryant were encountered. All three defendants were detained for approximately four hours until the agent returned with the search warrant. Hansen and Bryant were then taken to room 241 and Means to room 242. The search warrant for Means's room 242 was executed and the agents then announced their intention to search Means, who then removed several plastic bags of cocaine from his boots. Thereafter Bryant was searched in room 241 and more than $30,000 was discovered inside his socks and under his trousers.

Government witnesses testified that Means and Bryant were immediately advised of their rights at the time they were detained in the motel lobby. Defense testimony by Means and Bryant, as well as a hotel employee, indicated that the two defendants were told they were under "house arrest" at the time they were detained in the lobby and that Means was not advised of his rights until several hours later, between four and six o'clock in the morning. Bryant testified that he was never fully advised of his rights because after an agent had read the first sentence to him off of a card, Bryant indicated he wasn't sure that he understood the sentence, at which point the agent became frustrated and walked away.

The court suppressed all evidence seized during the searches of Means and Bryant, stating (III R. 402–03):

With respect to the defendants Bryant and Means, they were under arrest—unlike Napoleon at Elba, they were under arrest from the time that agents contacted them and they returned to the motel

and were held in the lobby and escorted to and from the toilet facilities; and there was an unreasonable, unconscionable, and unnecessary delay on the advisement of their rights.

The government has said it intends to solicit no testimony concerning that and, indeed, in the trial it shall not because that and any statements obtained or any items obtained in such search of their persons is suppressed.

On appeal, the Government challenged this suppression ruling which the defendants support on numerous theories.

*Our disposition as to the search of Means*

We must agree with the district court that from the time of their original detention, Means and Bryant were under arrest or at any rate had their Fourth Amendment interests infringed to the point that the traditional safeguards against illegal arrest were triggered. *See Dunaway v. New York*, 442 U.S. 200, 206–16, 99 S.Ct. 2248, 2253–58, 60 L.Ed.2d 824. Hence, our initial inquiry must be whether or not such detention was with probable cause and if so, whether the subsequent searches were incident to a lawful arrest.[9a]

■■■■■ To determine whether probable cause existed an examination of the facts in each particular case is necessary. *United States v. Matthews*, 615 F.2d 1279, 1283 (10th Cir.). Probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Id.* at 1284; *United States v. Borrelli*, 621 F.2d 1092, 1095 (10th Cir.), *cert. denied.* 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 222. It is

not necessary that the officer possess knowledge of facts sufficient to establish guilt, but more than mere suspicion is required. *Matthews, supra*, 615 F.2d at 1284. In addition, association with known or suspected criminals is not enough in itself to establish probable cause. *See Sibron v. N. Y.*, 392 U.S. 40, 62–63, 88 S.Ct. 1889, 1902–03, 20 L.Ed.2d 917; *United States v. Irurzun*, 631 F.2d 60, 62 (5th Cir.); *United States v. Chadwick*, 532 F.2d 773, 784 (1st Cir.), *aff'd* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538. And finally, probable cause must exist at the moment of the arrest. *United States v. Smaldone*, 485 F.2d 1333, 1350 (10th Cir.), *cert. denied*, 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286.

■■■■ We are persuaded that the agents did have probable cause to arrest Means at the time of the initial detention. They had information from which it could be inferred that Thomas's source of cocaine was staying at the motel in the vicinity of rooms 240–244, that the source still probably had 1¾ pounds of cocaine with him, and that Means, Hansen and Bryant had arrived together and registered at the same time from the same home state as Thomas. They had information from the search of Hansen's room 241 indicating drug activity but the cocaine itself was not found in the room. And significantly, they knew that the key to Means's room 242 was found in Hansen's room.[10] We conclude that this evidence was sufficient for the agents to believe that Means was involved in the drug activity and that he might indeed have the cocaine in his room. Thus, even without having observed the drugs in his room, there was sufficient probable cause to arrest Means at the time he was first detained in the motel lobby.

■■■■ Our next inquiry then is whether the search of Means's body some four hours

---

**9a.** The recent case of *Michigan v. Summers*, —— U.S. ——, ——, 101 S.Ct. 2587, 2595, 69 L.Ed.2d 340, which holds that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted," does not require a different inquiry here since the war-

rant to search Means's room was not based on probable cause, as discussed earlier, *supra* at 1385–1387, 101 S.Ct. at 2595.

**10.** The illegality of the search of Hansen's room, discussed earlier, cannot be asserted by Means and Bryant and thus this information may be considered at this point.

later and after the illegal search of his room was incident to his lawful arrest. It has long been settled that a lawful arrest establishes the authority to search and "in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427. We feel that the search here was incident to the arrest in spite of the four hour delay between the arrest and search. In *United States v. Edwards,* 415 U.S. 800, 805, 94 S.Ct. 1234, 1238, 39 L.Ed.2d 771, the Court sustained a search as incident to a lawful arrest even though it took place at the city jail where the defendant was being held, some 10 hours after his arrest, stating:

> This was no more than taking from respondent the effects in his immediate possession that constituted evidence of crime. This was and is a normal incident of a custodial arrest, and reasonable delay in effectuating it does not change the fact that Edwards was no more imposed upon than he could have been at the time and place of the arrest or immediately upon arrival at the place of detention. The police did no more on June 1 than they were entitled to do incident to the usual custodial arrest and incarceration.

Even though in *Edwards* the defendant was later searched at the jail and Means was subsequently searched at the motel, we do not feel this difference compels a contrary result. Means was no more imposed upon by the search four hours later than he could have been at the time and place of arrest. We conclude that the search was incident to a lawful arrest, and the evidence seized from Means's body is admissible as to him.

▬ Additionally, we do not believe a different result is compelled by the fact that Means was not given *Miranda* warnings at the time of his arrest and the fact that Means's motel room was illegally searched after his arrest but prior to the search of his body. *Miranda* warnings are intended to insure the defendant's Fifth Amendment rights against self-incrimination and failure to give such warnings would require exclusion of statements made during custodial interrogation. *See Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694. Here there are no statements in issue and delay in giving the warnings is irrelevant.

▬ Nor does the illegal search of Means's room 242 require exclusion under *Wong Sun* of the evidence found on Means's body. Since the agents already had probable cause to arrest and search Means before the search of his room, the evidence obtained from the search of his body was not tainted by the illegal search of his room and is admissible as to Means.

▬ Even though we hold that the evidence found on Means's body cannot be suppressed as to him, we find that it must be suppressed as to Hansen. Just as the illegal search of Hansen's room 241 and Hansen's person led to the agents' search of Means's room 242, this same information led to the detention of Means and the search of his person. Accepting as we do the court's finding that the drugs in Means's room 242 were not in plain view, we hold that the evidence from Means's body was come at by exploitation of the illegality of the search of Hansen's room 241 and consequently must be suppressed as to Hansen.

▬ As noted, Bryant also argues that *Wong Sun* should apply to exclude as to him the evidence produced by the search of Means's person because the illegal searches of rooms 241, 242 and 243 led to the body searches. Because Bryant can complain only of the search of his own room, 243, we need examine only this one search. We agree with Bryant that when the agent asked the hotel employee to check his room 243 for a black briefcase, an illegal search of Bryant's room took place. However, we conclude that the cocaine found on Means's person was discovered because of leads independent of the wrongful search of Bryant's own room, namely the information

gained from the search of Hansen's room 241 and the observation of the marks on his body. Hence, Bryant's challenge to the evidence obtained by the search of Means's person fails.

In sum, we sustain the suppression order insofar as it excludes as to Hansen the cocaine obtained from the search of Means's person; we must reverse the order in part and hold that the cocaine found on Means is admissible as to Means and Bryant.

*Our disposition as to the search of Bryant*

■ Finally, we turn to the arrest and search of Bryant. As noted, we agree with the district court that Bryant was under arrest from the time of his initial detention in the motel lobby. However, we do not believe that the agents had probable cause to arrest Bryant at that time. We have determined that the information known to the agents at that time warranted a reasonable belief that Hansen and Means were involved in illicit drug activities, but none of this information directly implicated Bryant. In fact, the knowledge that nothing suspicious was observed in his room tended to negate probable cause as to Bryant. The only information tending to implicate Bryant was the fact that he was traveling with suspected cocaine dealers. Such information may give rise to a suspicion that Bryant was also involved in the drug activity, but it does not amount to probable cause. *See Sibron v. United States, supra; United States v. Irurzun, supra; United States v. Chadwick, supra.* Because there was no probable cause for his arrest, the search of Bryant's body cannot be upheld as incident to the arrest. *See United States v. Jit Sun Loo,* 478 F.2d 401, 405 (9th Cir.).[10a]

■ We cannot accept the Government's contention that we must look at probable cause only at the time of the search so that even if the initial detention was illegal, the subsequent search of Means's room 242 established probable cause to arrest and search Bryant. There was no break between the original illegal detention and the point at which the agents "formally arrested" Bryant. To hold as the Government suggests would be to ignore the rule that probable cause must exist at the moment of the arrest. *United States v. Smaldone, supra,* 485 F.2d at 1350. Further, it is questionable whether probable cause existed to arrest Bryant even after the search of Means's room 242 yielded the cocaine. Such evidence indicated merely that Means and Hansen were both involved in drug activity. However, there was still no evidence linking Bryant to such activity beyond mere association. Thus the money found in the search of Bryant's person must be suppressed as to Bryant.

There remain the contentions of Hansen and Means that the evidence of the money found on Bryant must also be suppressed as to them under *Wong Sun.* We must uphold the contentions of both defendants in this respect.

■ We agree with Hansen that the primary taint of the prior illegal search of his room 241 is not sufficiently removed by an independent source of information. Hence evidence from the search of Bryant's person, as well as that from Means's room 242 and the arrest and search of Means, must be suppressed as to Hansen.

■ We are further convinced that the trial court properly suppressed as to defendant Means the evidence obtained from the search of Bryant's person. As the Government recognizes, it was only after the search of Means's room 242 that the agents determined that they should formally arrest and search Means and Bryant. The Government relies heavily on the fact that a large amount of cocaine was found in room 242 as establishing probable cause to arrest Bryant. Under such circumstances, we feel that the search of Bryant was a result of exploitation of the illegal search of

---

**10a.** As discussed in n.9, *supra,* p. 1385, *Michigan v. Summers* does not compel a different analysis because the search warrant for room 242 was not based on probable cause. Additionally *Michigan v. Summers* would not apply to the detention of Bryant since Bryant was not an occupant of the premises being searched but was instead registered in a separate room.

Means's room 242 and thus the money found on searching Bryant must be suppressed as to defendant Means.

In short, money seized during the search of Bryant must be suppressed as to all three defendants.

## III

### CONCLUSION

In sum, the suppression order of the district court is affirmed in part and reversed in part as follows:

*First,* as to defendant Hansen the order is affirmed in all respects as to the suppression of evidence obtained as a result of the several searches and seizures in question, the unconsented search without a warrant of his own room 241 at the Skyways Inn Motel and the unlawful observation of his person being matters about which he can complain, and the remaining evidence being subject to suppression under *Wong Sun.*

*Second,* as to defendant Means the order is affirmed insofar as it suppresses all evidence found in the search without a valid warrant of Means's room 242 in the Motel and the evidence found in the search of defendant Bryant's person, which evidence is suppressed under *Wong Sun.* The order is reversed insofar as it suppresses evidence found in the search with probable cause of Means's person and during the search of Hansen's room 241 at the Motel and of Hansen's person, the latter searches with respect to Hansen's room and person being matters about which Means cannot complain.

*Third,* as to defendant Bryant the order is affirmed insofar as it suppresses the evidence of the money found during the search of Bryant's person following his detention without probable cause, about which search Bryant can complain. The order is reversed insofar as it suppresses evidence found in the search of Hansen's room 241, of Hansen's person, of Means's room 242, and of Means's person—all of the latter searches being matters about which Bryant cannot complain.

IT IS SO ORDERED.