**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Alex HARDING, a/k/a Mark Harding, Defendant-Appellant.**

**No. 72–1648.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Feb. 21, 1973.

Decided March 16, 1973.

Rehearing Denied April 6, 1973.

---

Edward H. Sherman, Sherman & Sherman, P. C., Denver, Colo., for defendant-appellant.

Before HILL and DOYLE, Circuit Judges, and BRATTON, District Judge.

DOYLE, Circuit Judge.

This is an appeal from a conviction by a jury on a charge of importation of obscene matter. The indictment which was returned on August 25, 1971, charged the defendant with the offense of knowingly and unlawfully taking and receiving from an express company one twelve pound carton containing 41 obscene books and five reels of obscene or filthy motion picture films which were then being transported in commerce from Los Angeles, California to Denver, Colorado, all in violation of 18 U.S.C. § 1462.

There is little evidentiary dispute in the case, and the main issues are first, whether a search by a private person violated the defendant's Fourth Amendment rights and, secondly, whether the element of criminal intent was adequately submitted to the jury, and also whether the evidence was sufficient to establish the defendant's knowledge of the nature and character of the obscene materials which were transported.[1] We have examined the several points raised by the defendant, and we conclude that the appeal is lacking in merit and that the judgment must be affirmed.

The evidence established that on January 14, 1971, the Realher Corporation delivered a twelve pound carton to Emery Air Freight in Los Angeles, California, addressed to Ace Books, 3220 Wyandot Street, Denver. It was to have been sent COD and the charges amounted to $425.00. The bill had a request "Please call this number on arrival" and gave the telephone listing for Alex Harding, a/k/a Mark Harding. The address was 3220 Wyandot. The Emery agent became suspicious that the package which showed that it contained printed

William K. Hickey, First Asst. U. S. Atty. (James L. Treece, U. S. Atty., on the brief), for plaintiff-appellee.

1. Secondary questions involve legality of a stipulation as to obscenity and possible error in ruling that a prior conviction could be shown.

matter might, in view of the $425.00 in charges, be pornography and pursuant to permission granted in the CAB Tariff examined the same. Once it was discovered that the contents consisted of what were apparently obscene materials, the FBI was notified and an agent Phinney came out. He also inspected the contents. Phinney conducted a local investigation and ascertained that a Charles A. Keller had delivered the package for shipment. After the inspection had been made the package was resealed and shipped. It was received in Denver by the Emery Company from Continental Airlines and the consignee was notified of its arrival. Meanwhile, Emery had received several calls inquiring as to whether the package had arrived. On January 19 one Valeria Stewart, who did occasional work for the defendant, according to her testimony, went to pick up the package at his instruction. The defendant had given her the money to pay for the COD. She made the trip to Emery in defendant's automobile. When Valeria Stewart sought to pick up the package the officers who were waiting for her intercepted her effort and thereupon she, together with the package, proceeded to U. S. District Court for a hearing.

An order to show cause as to why the described package should not be delivered to the government as evidence had been issued in a separate civil proceeding. The initial ex parte order was based on an affidavit submitted by the FBI agent who had made the initial inspection in Los Angeles. A hearing was not held on the day in question. A postponement was granted at the request of the attorney who appeared. At the hearing the contention was raised that the search was unlawful; however, it was ordered that the package and contents be delivered to the government.

At the subsequent trial in May 1972, the defendant, together with his attorney, entered into a stipulation that the materials in the carton were obscene. The guilty verdict was entered on May 24, 1972.

## I.

## SUFFICIENCY OF THE INDICTMENT

We see no merit whatsoever in the defendant's contention that the indictment was inadequate. This was a detailed statement of the offense charged which contained all of the elements required by 18 U.S.C. § 1462. This section prohibits knowingly taking from an express company or other common carrier "any matter or thing the carriage of which is herein made unlawful." The statute refers to obscene, lewd, lascivious or filthy book, pamphlet, picture, motion picture film, etc. The indictment charges that the defendant did knowingly and unlawfully take and receive from an express company or a common carrier "one twelve pound carton containing 41 obscene, lewd, lascivious, or filthy books, pamphlets, or pictures, to wit. . . ." The indictment then describes in detail the material in question and continues "which were then being transported and carried in interstate commerce from Los Angeles, California to Denver, Colorado, all in violation of Title 18, United States Code, Sections 1462 and 2."

Defendant maintains that the indictment does not aver that the defendant had knowledge that the carton contained material that was of obscene character. We disagree. The words "knowingly" and "unlawfully" refer to and modify the words describing the nature and character of the material, and so it clearly requires that the defendant know the nature of the contents. Moreover, the evidence establishing this knowledge was quite adequate. The testimony of Valeria Stewart and the circumstances as a whole were amply sufficient to convince the trier of the facts and the jury that the defendant was the individual involved. Ordinarily an indictment which follows the statute and sets forth the elements contained therein is sufficient to apprise the accused of the nature of the charge and to allow him to plead and defend. This is all

that is needed. *See* United States v. Kimball, 441 F.2d 505, 507 (10th Cir. 1971). *See also* Mims v. United States, 332 F.2d 944 (10th Cir.), cert. denied, 379 U.S. 888, 85 S.Ct. 158, 13 L.Ed.2d 92 (1964).

## II.

## WHETHER THERE WAS INVALIDITY IN CONNECTION WITH THE SEIZURE OF THE MATERIALS BY THE GOVERNMENT

Defendant contends that there was no lawful authority for the procedure used; that the search was illegal and that the obscene matter was seized without prior adversary hearing on obscenity. There is no showing whatever that the employees of Emery were working in conjunction with the FBI. Moreover, Emery had a valid interest in checking the contents of the package and so this particular search was not carried out pursuant to any direction by the government.

A search and seizure by a private person not acting in collusion with federal officers does not render the subsequently seized material inadmissible in evidence. 5 Orfield, Criminal Procedure under the Federal Rules § 41:25, at 709–10. For a discussion of the admissibility in criminal cases of evidence obtained by searches by private individuals, see 36 A.L.R.3d 553 (1971). *See* Burdeau v. McDowell, 256 U.S. 465, 474, 41 S.Ct. 574, 65 L.Ed. 1048 (1921), an early Supreme Court decision wherein business associates of the accused actually stole certain incriminating documents. Notwithstanding the theft aspect, a majority of the Supreme Court held that it was valid for the government to introduce this illegally obtained evidence. Other decisions have gone a long way, perhaps too far, in allowing the government to use evidence obtained by private individuals. Thus, in Cohen v. United States, 36 F.2d 461, 462 (3rd Cir. 1929), cert. denied, 281 U.S. 742, 50 S.Ct. 348, 74 L.Ed. 1156 (1930), it was held that notwithstanding the existence of an illegal search and seizure, the testimony of a stranger entering the premises during the search at the invitation of the occupant was admissible.

In United States v. Ashby, 245 F.2d 684, 686 (5th Cir. 1957), joint income tax returns voluntarily turned over by a wife were admitted over the objection of the husband, the spouses being separated. *See* United States v. Winfree, 170 F.Supp. 659 (E.D.Pa.1959).

In United States v. Goldberg, 330 F.2d 30 (3rd Cir. 1964), cert. denied, 377 U.S. 953, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964), documents and records of a corporation of which the taxpayer was president were taken without his knowledge by former employees, but were nevertheless held to be admissible.

It has been argued that Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) has generally condemned receipt of tainted evidence and has thus undermined the authority of the cases holding that evidence obtained by private persons is admissible. However, the tendencies have been to narrowly construe *Elkins* and to limit its effect to seizures by state officers.

Appellant places reliance on Corngold v. United States, 367 F.2d 1 (9th Cir. 1966). It is true that in the *Corngold* case the airline transportation agent participated in the search and was advancing the interests of his employer in doing so. The court held that the evidence was inadmissible, but carefully pointed out that the search was a joint operation of the customs agent and the TWA employee. The court said:

> When a federal agent participates in such a joint endeavor, "the effect is the same as though he had engaged in the undertaking as one exclusively his own." Byars v. United States, supra, 273 U.S. 28, at 33, 47 S.Ct. 248 at 250, 71 L.Ed. 520.

367 F.2d at 6 (footnote omitted). The court went on to quote Justice Frank-

furter in Lustig v. United States, 338 U.S. 74, 78–79, 69 S.Ct. 1372, 1374, 93 L.Ed. 1819 (1949) as follows:

[A] search is a search by a federal official if he had a hand in it * * *. The decisive factor in determining the applicability of the *Byars* case is the actuality of a share by a federal official in the total enterprise of securing and selecting evidence by other than sanctioned means. * * *

367 F.2d at 6.

■ No such federal participation, direct or indirect, in the initial search is present in our case. Consequently, the initial search was a private one and therefore there is no room for a claim that the evidence here was inadmissible. It is true that following the encounter with Mrs. Stewart at the airport the officers had a practical control over the material. At that point, however, the court had issued its initial orders, and there was probable cause growing out of the search in Los Angeles for the issuance of the search warrant and the order to show cause. The officers promptly caused the carton to be taken before the United States District Court Judge and an adversary hearing followed. After hearing the evidence that judge made extensive findings and conclusions that the material was obscene.

While it is true that expert testimony was not presented, the judge did not believe that this was necessary. He concluded that the material spoke for itself. We see no merit in the defendant's contentions as to the manner of obtaining possession of the material and validity of the procedure followed.

### III.

### WHETHER THE DEFENDANT CAN REPUDIATE THE STIPULATION

■ Defendant joined in a written stipulation that the material in question was obscene. He now raises a question as to whether this was proper, arguing that the issue is one of law. Undoubtedly the defendant so stipulated in order to avoid submission of the material to the jury. He wished to avoid the prejudice which would flow from the jury's examination of the written and pictorial material which was described by the trial judge as hard core. To allow the defendant to reconsider this stipulation on appeal would be indeed bad practice, for his decision to enter into the stipulation and avoid the public prejudice was undoubtedly a considered judgment. To allow him to change his mind following a verdict of guilty would be unjust to the government.

■ It is not accurate to say that the question is a matter of pure law. It is true that the judge must consider whether the constitutional issues enunciated in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) are satisfied. Thereafter, however, the question is one of fact for the jury. It is also clear that stipulations of fact made by the government and the defendant are binding. *See* Spillman v. United States, 413 F.2d 527 (9 Cir.), cert. denied, 396 U.S. 930, 90 S.Ct. 265, 24 L.Ed.2d 228 (1969) ("The appellant cannot stipulate to obscenity in order to avoid having the jury view the films and then claim they are not really obscene within the definition or meaning of the statute."); United States v. Rodriguez, 241 F.2d 463 (7th Cir. 1957) (A stipulation pertained to identity of the substance as marijuana and eliminated the necessity of evidence.); *cf.* Tomlinson v. Lefkowitz, 334 F.2d 262 (5 Cir. 1964), cert. denied, 379 U.S. 962, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965).

We are convinced that the defendant is bound by the stipulation which he entered.

### IV.

■ The final point is whether the court erred in ruling that the government could, if the defendant testified in his own defense, ask him whether he had been convicted of a morals charge in

1953. As we view it, this matter rested in the sound discretion of the trial court. There was no apparent abuse of discretion.

We have examined carefully the defendant's points and authorities and are of the opinion that the judgment must be affirmed.