UNITED STATES of America,
Plaintiff-Appellee,

v.

Kathryn June FORD,
Defendant-Appellant.

No. 74–1698.

United States Court of Appeals,
Tenth Circuit.

Argued May 23, 1975.

Decided Sept. 29, 1975.

Rehearing Denied Oct. 20, 1975.

Floy E. Dawson, Asst. U. S. Atty., Oklahoma City, Okl. (William R. Burkett, U. S. Atty., on the brief), for plaintiff-appellee.

Jack L. Freeman, Oklahoma City, Okl., for defendant-appellant.

Before MURRAH, BARRETT and DOYLE, Circuit Judges.

MURRAH, Circuit Judge.

This is an appeal from a judgment of conviction and sentence for the unlawful possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The sole question is the validity of a warrantless search and seizure under the Fourth Amendment which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . and [declares that] no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The facts are not materially in dispute.

On the morning of February 5, 1974, in San Francisco, California an unnamed woman delivered a shoebox size package wrapped in brown paper to the air freight agent for American Airlines. The package was addressed to Miss Linda Ford, 5208 Michigan Street, Oklahoma City, Oklahoma. When the air freight agent routinely asked about the contents of the package to be typed on the air bill, the woman appeared noticeably nervous to the agent and said she didn't know "what the contents are." When told that the agent would have to know so that it could be typed on the weigh bill she finally said, "Well, it is a present." The word "present" was typed on the weigh bill. When a small boy accompanying the woman gave his name, she appeared increasingly nervous and said that he was not her son. The woman's demeanor prompted the agent to seek the advice of his supervisor. Apprehensive that the package might contain matter not eligible for shipment, airline officials unwrapped and opened it. See ATP Tariff CAP No. 96, Rule 24.[1] It was found to contain about eight prophylactics, six or seven inches long, containing a powdered substance. The airline officials did not know the nature of the substance, but because of the sender's apparent nervousness they suspected it was contraband or a substance ineligible for air freight. Local police officers were called and upon their arriv-

---

1. This rule provides: "All shipments are subject to inspection by the carrier, but the carrier shall not be obligated to perform such inspection."

al were shown the contents of the open package. The officer in charge, who had four years experience in narcotics investigation, testified that prophylactics are commonly used for shipping narcotics. An on-the-spot field test showed that the substance was heroin. The police officers marked the package, placed a business card inside it, and resealed it. It was then placed on board the plane for Oklahoma City where enforcement officers were alerted and fully informed of the situation.

When the package arrived at the Oklahoma City airport, appellant Kathryn Ford, the mother of the addressee, claimed it and proceeded to a waiting car driven by another party. She placed the package in the car, and as she and the driver were leaving, officers converged on the car. As the officers approached the car appellant was seen to throw the package out; it and the air weigh bill were retrieved; the appellant was arrested and charged; the court overruled a motion to suppress the evidence; the contents were admitted into evidence; appellant was convicted and brings this appeal.

■ The government, for the first time on appeal, challenges Mrs. Ford's standing to invoke Fourth Amendment protection. Ordinarily, an appellate court will not take note of contentions not raised in the trial court. See *Hormel v. Helvering*, 312 U.S. 522, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); *United States v. Thomas*, 429 F.2d 407 (5th Cir. 1970); *United States v. Issod*, 508 F.2d 990, 994 (7th Cir. 1974); Cf. *United States v. Galvez*, 465 F.2d 681 (10th Cir. 1972) (where we affirmed a conviction for lack of standing to invoke the Fourth Amendment). We find no compelling reason to deviate from the general rule.

■ Next we consider the validity of the search, arrest, and seizure process in San Francisco and Oklahoma City. It seems to us that the events which occurred in California and Oklahoma were one episode and must be considered together for Fourth Amendment purposes.

Illegality in either place would be fatal to the government's case.

Ninety years ago the Supreme Court in *Boyd v. United States* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), first vitalized the Fourth Amendment and particularly the proscription against "unreasonable searches and seizures." Id. at 624, 6 S.Ct. 524. The Court traced the history of the abuses in England and in the colonies which inspired the incorporation of the amendment in the Bill of Rights as "the very essence of constitutional liberty and security" and cautioned the courts ". . . to be watchful . . against any stealthy encroachments thereon." Id. at 630, 635, 6 S.Ct. at 535.

Twelve years later, the Court in *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897), again referred to the Fourth Amendment as ". . . perpetuating, in their full efficacy, by means of a constitutional provision, principles of humanity and civil liberty, which had been secured in the mother country only after years of struggle, so as to implant them in our institutions in the fullness of their integrity, free from the possibilities of future legislative change." Id. at 544, 18 S.Ct. at 187.

*Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), emphatically declared for the first time that evidence obtained in violation of the Fourth Amendment was inadmissible as evidence against the accused. See also *Silverthorne Lumber Co. Inc. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). Since Boyd and Weeks, numerous cases have construed the phrase "unreasonable searches and seizures" with little consistency. The Court has often been sharply divided; so much so that it is difficult, if not impossible, to formulate any established doctrine for the determination of the meaning of the phrase in a particular case. Mr. Justice White put it well in a dissenting opinion when he observed, "It is clear that effects may not be seized without probable cause but the law as to when a warrant is required to validate their seizure is confused and confusing."

*Coolidge v. New Hampshire*, 403 U.S. 443, 513, 91 S.Ct. 2022, 2061, 29 L.Ed.2d 564 (1971).[2] Writing the opinion for the Court in Coolidge and discussing warrantless searches, Mr. Justice Stewart concluded, "Thus the most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions' . . . 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.' [*Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576; *Jones v. United States*, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514; *McDonald v. United States*, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153]." Id. 403 U.S. at 454, 91 S.Ct. at 2032. See also *Johnson v. United States*, 333 U.S. 10, 14–15, 68 S.Ct. 367, 92 L.Ed. 436 (1948). It is against this background that we judge the validity of the search and seizure in this case.

## THE SEARCH

■ Mrs. Ford does not question the right and duty of an air carrier to inspect any package or article submitted for shipment if it has reason to believe the package does not conform to tariff regulations. But, if government officers participated in this inspection, it became a warrantless government search, per se unreasonable unless falling within one of the carefully defined exceptions. See cases cited in *Coolidge v. New Hampshire,* supra, 403 U.S. at 475 n. 31, 91 S.Ct. 2022 and *Vale v. Louisiana*, 399 U.S. 30, 34–35, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). See also *Lustig v. United States*, 338 U.S. 74, 78–79, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949).

There is an abundance of recent cases arising out of airline freight inspections of which *United States v. Harding*, 475 F.2d 480 (10th Cir. 1973), is typical. In that case, suspicious airline officials examined a package left for shipment, discovered obscene materials, and notified an FBI agent who came to the scene and inspected the contents before the package was resealed and shipped. At its destination, alerted and informed government agents arrested the addressee, and pursuant to court order seized the materials as evidence. We held that the above inspection was authorized by tariff regulations; that it was a private search, because not "in collusion with federal officers"; and that it did "not render the subsequently seized material inadmissible in evidence." Id. at 483.

In *United States v. Pryba*, 163 U.S. App.D.C. 389, 502 F.2d 391 (1974), the District of Columbia Circuit was confronted with the question of whether a search at the airport by airline officials was private or governmental. In that case, airline employees became suspicious of a package tendered for shipment, opened it, and determined by sight examination that it contained explicitly sexual films. They called a local FBI agent who came to the scene with a projector and verified what the airline officials suspected. After repackaging, the materials were forwarded to their intended final destination where they were later seized pursuant to a search warrant obtained on the basis of information developed by the California inspection. Reviewing all of the relevant case law on the subject, Judge Spottswood Robinson, writing for the court, held that the search was private because it was "made on the carrier's own initiative for its own purposes," and the subsequent FBI activity did not constitute "any new or different search." Id. at 398, 401.

Two cases from the Seventh Circuit drew a thin line between private inspection and governmental participation. In *United States v. Issod*, 508 F.2d 990 (7th

---

**2.** But see Mr. Justice Black concurring and dissenting in *Coolidge,* 403 U.S. at 493, 91 S.Ct. 2022.

Cir. 1974), the court concluded that if a private (non-governmental) freight agent opened and searched a trunk, the subsequent opening of an accompanying second trunk by government officers would not be sufficient participation to make out a governmental search as to the first trunk. Following the Issod guidelines, another panel of the same court in *United States v. Newton*, 510 F.2d 1149 (7th Cir. 1975), held that there had been a government search where airline employees searched a suitcase for the sole purpose of aiding the investigative work of a government drug agent who witnessed the search. In that case, the suitcase claimant had refused to provide identification to airline employees. They called a drug agent to the scene who disclaimed any authority to open the suitcase for lack of probable cause. The employees then opened it in his presence and immediately handed him the contents for on-the-spot chemical tests, which disclosed contraband narcotics. The employees returned the contents to the suitcase and the suitcase to the claimant, at which time, both were seized by the drug agent. The court concluded that a search of the luggage by airline employees was unnecessary to ascertain to whom the luggage belonged, and that "[t]his was not a 'hands-off' participation [in the search] by the. federal agents." Id. at 1153. The contents were thus inadmissible.

In *Newton*, a government agent was present from the beginning of a search by private airline agents which was not directly related to airline purposes. In our case, as in *Pryba* and apparently in *Issod*, the government agents were called in after completion of a privately motivated and authorized inspection by airline officials which exposed contraband to plain view. Compare *Corngold v. United States*, 367 F.2d 1, 5 (9th Cir. 1966), with *Gold v. United States*, 378 F.2d 588, 590–91 (9th Cir. 1967).

■ We, thus, have an inspection which was private in both motivation and manner. The government agents appeared only after the suspicion of the possible presence of contraband was confirmed by discovery of the prophylactics. At this point, it was the province and indeed the duty of the officers to further investigate the open box, which they did without any invasion of protected rights of privacy, to determine whether the suspicious substance in plain view was in fact contraband and, if so, to commence an arrest process. Indeed, they could not turn their backs or walk away from what appeared to their trained eyes to be, and which was, a violation of the law. In these circumstances, we are unable to perceive any new or different search after the government agents arrived. We conclude that the events which occurred in San Francisco did not amount to a government search; rather, it was a private inspection, authorized by tariff regulations and not violative of the Fourth Amendment.

## THE SEIZURE

Having determined that no constitutional rights of Mrs. Ford were violated in the search, we proceed with an analysis of the seizure. Appellant Ford apparently contends that the seizure occurred in Oklahoma City, separate and distinct from the search in California, and that since there was time to obtain a warrant before the Oklahoma City seizure, the warrantless seizure violated the Fourth Amendment. See *Coolidge v. New Hampshire,* supra, 403 U.S., at 470–471, 482, 91 S.Ct. 2022; *Trupiano v. United States,* 334 U.S. 699, 705, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948). We think this analysis misapprehends the facts and realities of the situation.

■ Realistically, the contraband was seized by the officers in California before it was ever shipped to Oklahoma. See *United States v. DeBerry*, 487 F.2d 448 (2d Cir. 1973). The California officers marked the package and placed a business card inside it. Upon receiving assurances of cooperation from Oklahoma City officers, they authorized its shipment. This action constituted the initial act of control and dominion over

the contraband, for without government authorization the airline officials could not have shipped the contraband. This official dominion continued unbroken because close surveillance followed the seized contraband, insuring that it remain within official possession. Actual physical control was in fact reasserted by the Oklahoma City police when the arrest process was completed. These material facts are indistinguishable from *DeBerry,* supra, and we adopt the analysis of that case in concluding that the official seizure of the contraband occurred in San Francisco when the government asserted dominion over it. The seizure must be judged against the Fourth Amendment as of that time and place.

Certainly, the seizure meets the Fourth Amendment requirement of probable cause, because the government agents involved knew that the substance was contraband before seizing it. But, the officers' failure to obtain a warrant to seize can be excused only if the circumstances at the time of the seizure were sufficiently exigent to make their course of action imperative. See *Coolidge,* supra. We believe that such circumstances existed here. The California officers had determined with certainty—and without violation of privacy—that the substance submitted for shipment was contraband. At that time, they could have ordered that the substance be detained until a magistrate could issue a warrant to seize it. The time delay required to obtain a warrant, however, might very well have warned the parties to the crime of the government's presence and prevented their apprehension. If the contraband had not been shipped immediately, the Oklahoma City addressee probably would have become suspicious and remained aloof, and the officers' investigation and arrest process would have proven unproductive. See also cases cited in *Issod,* supra, at 993. In these circumstances we think the California officers' actions in seizing the package were reasonable and necessary. No warrant to seize was required here.

The search was private, and the ensuing warrantless seizure was made upon probable cause under exigent circumstances. Neither the search nor the seizure violated appellant's Fourth Amendment rights.

Affirmed.