UNITED STATES of America,
Plaintiff-Appellee,

v.

Johnnie Mack MORGAN (82–5441) and George Brooks, Jr. (82–5442),
Defendants-Appellants.

Nos. 82–5441, 82–5442.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 25, 1983.

Decided Sept. 26, 1984.

As Amended Jan. 3, 1985.

Niles S. Nimmo, argued, R. Price Nimmo, Nashville, Tenn., for defendant-appellant Morgan.

David Vincent, argued, Nashville, Tenn., for defendant-appellant Brooks.

Joe B. Brown, U.S. Atty., William Cohen, Asst. U.S. Atty., argued, Nashville, Tenn., for plaintiff-appellee.

Before JONES and WELLFORD, Circuit Judges, and HARVEY, District Judge.*

WELLFORD, Circuit Judge.

This is an appeal following a criminal trial resulting in the conviction of appel-

---

* Honorable James Harvey, United States District Court for the Eastern District of Michigan, sitting by designation.

lants on charges of possession with intent to distribute controlled substances and conspiracy in respect to possession and distribution of drugs. The issue in the case involves whether or not appellants' motions to suppress evidence of Dilaudid and Talwin seized after a warrantless search should have been granted. The trial judge overruled the suppression motions after a hearing and this appeal arises out of the suppression ruling.

On Saturday, February 6, 1982, a passenger service agent for Republic Airlines at the Detroit airport received a suitcase from appellant Morgan, to be shipped air express to Nashville on a 7:30 a.m. flight. The suitcase was given to the agent only a few minutes before flight time, the contents identified as clothing. The agent, Victoria Falwell, recognized Morgan as having shipped a similar suitcase approximately ten days earlier under like circumstance. She testified that it was unusual to ship a suitcase of clothing by air express due to the expense involved.

The suitcase missed the scheduled flight because a conveyor belt jammed. Falwell became suspicious, so she requested and received permission from her supervisor to open the suitcase.

Falwell took the suitcase from a red "VIP bag" in which she had placed it in accordance with normal procedures. She then unzipped the unlocked suitcase "all the way around, .... lifted up the lid and found [another] smaller suitcase inside .... surrounded by rolled-up Levis." The inner suitcase was also unlocked. She unzipped it and found two paper bags as well as more clothing. Inside the paper bags she found bottles of drugs labeled Talwin and Dilaudid. Falwell testified that she was surprised at the contents she found. She had never before during her six years as an agent with the airline opened a suitcase except to look for identification with respect to lost shipments, or to inspect damage. The airline agent then called a pharmacist who informed her that Talwin and Dilaudid were names for controlled substances. Falwell called the FBI, who in turn referred her to The Drug Enforcement Administration (DEA).

Falwell contacted DEA agent Heath at approximately 8:30 a.m. Agent Heath testified he met with another DEA agent at 9:30 a.m. and they arrived at the airport at approximately 10:30 a.m. to 11:00 a.m.[1] The package was scheduled to go out on the next flight to Nashville at 11:20 a.m. Brooks, the consignee, had checked with a Republic representative in Nashville before the agents arrived at the Detroit airport inquiring about the shipment.

Before the agents' arrival, Falwell had closed the suitcase and put it in the condition in which she had originally seen it. The agents questioned Falwell and learned that a man named Morgan (appellant herein) had presented the suitcase for shipment to George Brooks, Jr. (the other appellant) in Nashville. They examined airline documentation for a similar kind of shipment from Morgan in Detroit to Brooks in Nashville in late January.

> The lawful discovery by common carriers or customs officers of contraband in transit presents law enforcement authorities with an opportunity to identify and prosecute the person or persons responsible for the movement of the contraband. To accomplish this, the police, rather than simply seizing the contraband and destroying it, make a so-called controlled delivery of the container to its consignee, allowing the container to continue its journey to the destination contemplated by the parties. The person dealing in the contraband can then be identified upon taking possession of and asserting dominion over the container. *Illinois v. Andreas*, 463 U.S. 765, 103 S.Ct. 3319 at 3322, 77 L.Ed.2d 1003 (1983) (footnotes omitted).

As Falwell told the agents what had occurred, and without any request from the agents, she re-opened the suitcase in their presence and pointed out to them the inner suitcase. She told the agents that the in-

---

1. The agents thought it was 10:30 a.m., Falwell thought it was about 11:00 a.m.

ner suitcase was similar to the one that had been previously shipped by Morgan, and pointed out the containers with the suspected drugs inside. The agents touched neither the case nor the bag inside nor the containers with the suspected drugs until they had been reopened by Falwell. The bottles were identified on the outside as Talwin and Dilaudid, and were clearly visible after the inner suitcase and paper bag were opened.

Agent Heath maintained that he had no basis for a warrant prior to about 11:00 a.m., since he was merely investigating in a routine fashion the call received from Falwell, who was unknown to him at the time.[2] No policies or actions of the DEA prompted the search by the Republic agent; it was instituted on her own initiative. In addition, there was neither any promise nor expectation of reward from DEA or the airline.

After this investigation, the DEA agents took custody of the suitcase. A controlled delivery was then arranged to take the suitcase with its contents to Brooks in Nashville on the next available flight on the same day. Arrangements could not be completed in time for the 11:20 a.m. flight, so the suitcase was put on a flight arriving in Nashville at approximately 2:00 p.m. Agent Heath was told that Brooks had earlier been waiting at the Republic counter in Nashville for the shipment. By prearrangement, another Republic agent delivered the suitcase to Brooks in Nashville, who signed a receipt for it. Brooks was then arrested, bag in hand, by the same DEA personnel. The appellants offered no proof at the suppression hearing.

Appellants take the position that the search by the airline agent was subject to Fourth Amendment limitations. The district court found that the initial search was based on the employee's personal suspicions that the suitcase contained drugs or some hazardous material. The court found no government sanction, involvement, or request concerning the search, and concluded that consequently it constituted a private act to which no Fourth Amendment warrant requirements attached.

In addition, the district court found that the airline employee's reopening of the suitcase to show the DEA agents the contents constituted private action, since if the employee had left the suitcase open and the DEA agents had seen the bottles in the open suitcase, it would clearly be private action. Further, the court found that the suitcase was not "seized" by the DEA agents until it arrived in Nashville and Brooks was arrested.

Appellants also argued at the suppression hearing that the DEA agents should have secured a search warrant. The district court found that after the agents reached the Detroit airport, completed their investigation, and then left the Nashville airport, they could not reasonably have been required to obtain a warrant. Upon arrival in Nashville, exigent circumstances existed; namely, Brooks leaving the Nashville airport with the drugs. Accordingly, the trial court held the arrest and seizure without a warrant to be justified and overruled the suppression motion.

■■■■ We affirm. The actions by Falwell were private actions, not directed, controlled, nor initiated by law enforcement agents. Even a wrongful search or seizure by a private party does not violate Fourth Amendment rights, and the government may utilize such evidence if it has acquired such evidence lawfully. *Coolidge v. New Hampshire*, 403 U.S. 443, 487–90, 91 S.Ct. 2022, 2048–2050, 29 L.Ed.2d 564 (1971); *Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980) (Stevens, J.). In such cases, "there was nothing wrongful about the Government's acquisition of the packages or its examination of their contents to the extent that they had already been examined by third parties." *Walter*, 447 U.S. at 656, 100 S.Ct. at 2401. Furthermore, "the Fourth Amendment proscribes only governmental

---

**2.** Agent Heath testified that he had not even advised Falwell to detain the bag pending his opportunity to investigate at the airport what she had related to him.

action, and does not apply to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the government or with the participation or knowledge of any governmental official." *United States v. Coleman,* 628 F.2d 961, 964–65 (6th Cir.1980) (citing *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921)). This is not to say that Falwell's private action in searching appellants' baggage, based on her apparently well-founded suspicions, was wrongful or unreasonable under the circumstances, although we do not necessarily condone it in view of her position as agent for a public common carrier.[3]

Our determination that the initial search by Falwell was a private action, and that she did not act as an agent of the government does not, however, end the inquiry. For appellants to prevail in this case to exclude the evidence based on Fourth Amendment considerations, they must show that they had a privacy or property interest protected by the Fourth Amendment and they must show illegal conduct by the government that intrudes on that interest.[4] *See Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Barry,* 673 F.2d 912, 917 (6th Cir.), *cert. denied,* 459 U.S. 927, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982).

In *Barry,* this Court found that an appellant's privacy interest in contraband shipped by Federal Express was dependent on two factors: the risk of exposure and the incriminating appearance of the contraband. With regard to the risk of exposure, the court found that the shipper and consignee of the drugs assumed the risk that the common carrier "would for some purpose open the package, be it for reasons of security, an accident, or damage...." 673 F.2d at 919.[5] In this case, appellants' decision to ship the drugs under circumstances that were likely to arouse suspicion increased the risk of exposure. They brought a suitcase to the airport at the last moment to be shipped in an expensive manner, and stated that it contained clothes. In addition, a suitcase had been shipped in a similar manner on the same airline by the same person only two weeks previously. These actions, which aroused the suspicions of the Republic agent for the first time during her six years of service, "could only serve to reduce ... [appellants'] subjective expectation of privacy in the parcel ... consigned." 673 F.2d at 919.

In its examination of the incriminating nature of the materials shipped, the *Barry* court relied on the fact that Barry and his supplier "shipped a large quantity of pills in clear bottles which were plainly labeled Methaqualone." 673 F.2d at 919. As in *Barry,* appellants in this case shipped contraband in clearly labeled bottles placed in an unlocked container, although the bottles were concealed to a greater degree within the unlocked container. Appellant Morgan, then, had no reasonable expectation of privacy in the contraband and could not claim that its seizure by a private party and subsequent transfer to DEA agents violated his constitutional rights. *Barry,* 673 F.2d at 919.

This action of the carrier in this case was similar to that of Emery Air Freight in *United States v. Rodriguez,* 596 F.2d 169 (6th Cir.1979), noted and distinguished in *Barry,* because the seizure of drugs in *Rodriguez* was found justified,

---

**3.** See the Air Transportation Security Act, § 204, 49 U.S.C. § 1511 (1974), and compare this court's comments concerning an air carrier's activity similar to this in *United States v. Rodriguez,* 596 F.2d 169, 175 (6th Cir.1979).

**4.** When acting without a warrant in effecting a seizure of evidence, even of suspected contraband, the government must show that its conduct was valid in response to a Fourth Amendment challenge. *Katz v. United States,* 389 U.S.

347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

**5.** In *Barry,* while the reason the package was directed to the Federal Express employee was its damaged condition, the employee's sole reason for opening the package was his suspicion that it contained drugs. 673 F.2d at 913–14.

also without a warrant, on other grounds, which we consider analogous to the fact situation in this case. Also in *Illinois v. Andreas, supra,* the Supreme Court approved a warrantless reopening by Drug Enforcement Agency officers of a container in which drugs had been observed initially by a customs inspector at an airport, holding that this did not violate the involved parties' right of privacy or Fourth Amendment rights in the shipment of a controlled delivery effected the next day. It was noted in that case:

> Common carriers have a common law right to inspect packages they accept for shipment, based on their duty to refrain from carrying contraband. *See United States v. Pryba,* 502 F.2d 391, 399–400 (CADC 1974).

*Andreas,* 103 S.Ct. at 3322 n. 1.

> When common carriers discover contraband in packages entrusted to their care, it is routine for them to notify the appropriate authorities. The arrival of police on the scene to confirm the presence of contraband and to determine what to do with it does not convert the private search by the carrier into a government search subject to the Fourth Amendment. *E.g., United States v. Edwards,* 602 F.2d 458 (CA1 1979).

*Id.* at 3323 n. 2.

Even if, however, Morgan and/or Brooks initially had a privacy interest in the contents of the suitcase to be shipped by Republic Airlines, the private action by the carrier representative did not violate their Fourth Amendment rights. Nor were defendants' Fourth Amendment rights violated by the revelation of the contents of the suitcase by this carrier representative to the government agents. In a case involving a shipment of drugs via a public carrier the Supreme Court has stated:

> Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now-nonprivate information: "This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information re- · vealed to a third party and conveyed to him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in a third party will not be betrayed." *United States v. Miller,* 425 U.S. 435, 443, 96 S.Ct. 1619, 1624, 48 L.Ed.2d 71 (1976). The Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated. (Footnote omitted.)

*United States v. Jacobsen,* —— U.S. ——, ——, 104 S.Ct. 1652, 1658, 80 L.Ed.2d 85 (1984).

In *Jacobsen* the employee of a carrier examined the inside of a damaged package and discovered a white powdery substance suspected to be an illegal drug, whereupon the carrier notified the DEA. A DEA agent, without a warrant, removed the substance, which had been repacked by the carrier employee, tested it and found it to be cocaine. The Supreme Court reversed the decision of the Eighth Circuit Court of Appeals (683 F.2d 296), which had ordered the drugs suppressed, and found the actions of the DEA agents to meet constitutional standards. The Supreme Court noted that the Eighth Circuit opinion conflicted with this Court's decision in *United States v. Barry, supra.* —— U.S. at ——, 104 S.Ct. at 1656.

The Court in *Jacobsen* also made reference to *United States v. Andrews,* 618 F.2d 646 (10th Cir.), *cert. denied,* 449 U.S. 824, 101 S.Ct. 84, 66 L.Ed.2d 26 (1980), following its reference to *Barry.* —— U.S. at —— n. 3, 104 S.Ct. at 1656 n. 3. There, under factual circumstances remarkably similar to those present in this case, also involving a warrantless examination by a DEA agent of drugs discovered inside a package by an airline employee, the Court held that the actions of the DEA met constitutional standards and reversed the district court's suppression order, reasoning:

> There could be no such expectation [of privacy] following the initial lawful open-

ing and search in Miami and the subsequent claim of the package in Denver by Andrews after he had been informed by Agent Roth that it contained drugs. Andrews contends that it is the fact of his possession of the package in Denver prior to its warrantless seizure and search that gave rise to his reasonable expectation of privacy requiring Fourth Amendment protection. We disagree.

In the case at bar, unlike [*Arkansas v.*] *Sanders* [442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979)] and its progeny, the package when initially opened in Miami by Continental Airlines employees was unquestionably beyond the reach of the Fourth Amendment and the exclusionary rule. This Court has consistently held that searches by private individuals undertaken without "collusion with federal officers", [*United States v. Harding*, 475 F.2d 480 (10th Cir.1973)], or "at the behest of Government officials", [*United States v. Gibbons, supra*, 607 F.2d 1324 (10th Cir.1979)], do not implicate the Fourth Amendment inasmuch as no Governmental action is involved. *See also United States v. Ford* [525 F.2d 1308 (10th Cir.1975)] *supra.* Decisions from other courts have held likewise: *United States v. Rodriguez*, 596 F.2d 169 (6th Cir.1979) . . . .

*Andrews*, 618 F.2d at 652.

In addition to our finding that appellants had no reasonable expectation of privacy protected under the Fourth Amendment, especially after it was opened by Falwell, we find that the warrantless seizure of the suitcase was justified by exigent circumstances. The necessity of obtaining a warrant may be excused if the government law enforcement agents' actions were based on probable cause and if there were exigent circumstances justifying the actions undertaken without a warrant. *See Coolidge v. New Hampshire, supra.* In this case, there was unquestionably probable cause for the actions of the agents in seizing the contraband from the suitcase after they had made their investigation at the Detroit airport. Before then, however, there was no constitutional requirement to obtain a warrant in our view of the evidence. Until the investigation at the Detroit airport, the DEA agents did not have probable cause, but once they saw the bottles with manufacturer labels containing the suspected drugs, they clearly had probable cause.

Once the agents saw the labeled bottles and had probable cause, exigent circumstances precluded the obtaining of a warrant. The agents arrived at the airport between 10:30 a.m. and 11:00 a.m., and they were aware that the consignee of the contraband was at the Nashville airport inquiring about the shipment. It was necessary, then, to attempt to get the suitcase on the next available flight at 11:20 a.m., since delay might have effectively precluded the opportunity to arrest the intended consignee of the drugs. Therefore, viewed from the agents' perspective at the time of the "search," *i.e.*, Falwell's reopening of the suitcase in the agents' presence, the agents had only a short time to get the suitcase on the 11:20 a.m. flight. Consequently, this case can be distinguished from *Barry*, in which the package was not to be delivered until the next day.

■ We conclude that there were exigent circumstances demonstrated by the government in this case to effect the immediate seizure of the drugs for the purpose of making a controlled delivery under the time constraints that precluded seeking out a warrant. As stated in *United States v. McEachin*, 670 F.2d 1139, 1144 (D.C.Cir. 1981):

> In determining whether the Government has met its burden of demonstrating that the " 'exigencies of the situation' made a warrantless search 'imperative,' " *United States v. Martin*, 562 F.2d 673, 676 (D.C. Cir.1977) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971), we must be guided "by the realities of the situation presented ₕby the record." *United States v. Robinson*, 533 F.2d 578, 581 (D.C.Cir.1976) (*en banc*).

In this case, the DEA agents spoke to an Assistant United States Attorney to seek

advice about what to do in the context of the investigation after talking to Falwell and viewing the drugs. They were told to proceed immediately to effect the controlled delivery. We believe the factual situation to be stronger as to exigent circumstances than those in *McEachin, supra*. The officer in *McEachin* received information that the defendant had a sawed-off shotgun in his room at approximately 5:00 p.m. to 6:00 p.m. and did not conduct the search in question until 7:15 p.m. 670 F.2d at 1145. He did not contact the United States Attorney for advice, yet the warrantless search was sustained as valid because of well-grounded fear that evidence might be destroyed. Here, there was a legitimate and reasonable fear that the consignee of the drugs might never be apprehended successfully if the controlled delivery on a flight to leave in a short time were not effectuated. As noted by the court in *McEachin*: "The amount of time necessary to obtain a warrant by traditional means has always been considered in determining whether circumstances are exigent." *McEachin*, 670 F.2d at 1146. Further, as noted by the court in *United States v. Allison*, 639 F.2d 792, 794 (D.C. Cir.1980) (citing *United States v. Robinson*, 533 F.2d 578, 583 (D.C.Cir.1976) (*en banc*), *cert. denied*, 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1976) ): "A final factor supporting a finding of exigent circumstances is the strength of the showing of probable cause." We recognize the availability of a telephonic warrant under Fed. R.Crim.P. 41(c)(2). Such a procedure takes time, however, and efforts were being made to repack the baggage and ship it on a plane leaving in approximately a half hour to an hour. Exigent circumstances existed for the seizure without a warrant in light of the evidence, particularly in view of the strong probable cause that existed. *See United States v. Hackett*, 638 F.2d 1179 (9th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *United States v. McEachin, supra.*

■ We also conclude that the Republic employee's reopening of the suitcase in the presence of the DEA agents caused the labeled containers of drugs to be placed in the "plain view" of the agents, thereby obviating the need for a warrant. The requirements of the plain view doctrine were discussed at length in *Texas v. Brown* 460 U.S. 730, 103 S.Ct. 1535 at 1540, 75 L.Ed.2d 502 (1983) (plurality), interpreting *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality). In *Brown*, the court stated:

> In the *Coolidge* plurality's view, the "plain view" doctrine permits the warrantless seizure by police of private possessions where three requirements are satisfied. First, the police must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area.... Second, the officer must discover incriminating evidence "inadvertently," which is to say, he may not "know in advance the location of [certain] evidence and intend to seize it," relying on the plain view doctrine only as a pretext.... Finally, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure.

*Brown*, 103 S.Ct. at 1540 (footnote and citations omitted).

The DEA agents in the instant case had lawfully made the "initial intrusion" in that they were lawfully investigating the telephone call from the Republic employee. Moreover, the third *Coolidge* requirement is met since the labels on the bottles of pills made it "immediately apparent" to the agents that the items were evidence of a crime. With regard to these two requirements, the case at bar is analogous to this Court's decision in *United States v. Rodriguez*, 596 F.2d 169 (6th Cir.1979). In *Rodriguez*, an airline employee became suspicious of the defendant, who stated that a package to be shipped contained film equipment. The employee opened the package and found a brown powdery substance. He summoned the police, who came to the airport, saw the partly opened box, removed the contents and performed a field test on it. The opening and search of the

parcel by the Emery employee was determined to be private action, and the seizure of the suspected contraband was held permissible under the "plain view" exception to the warrant requirements. 596 F.2d at 172. The court found that the contents of the package were in plain view, and their incriminating nature was readily apparent. Therefore, we find the requirements that the initial intrusion be lawful and that the incriminating nature be readily apparent are satisfied in this case. As the Court in *Andreas* noted:

> The simple act of resealing the container to enable the police to make a controlled delivery does not operate to revive or restore the lawfully invaded privacy rights.

> This conclusion is supported by the reasoning underlying the "plain view" doctrine. The plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity. *Texas v. Brown*, [460] U.S. [730] at [738] and n. 4 [103 S.Ct. 1535 at 1540 and n. 4, 75 L.Ed.2d 502] (plurality opinion); *id.*, at [744, 103 S.Ct. at 1544] (Powell, J., concurring); *id.*, at [751, 103 S.Ct. at 1547] (Stevens, J., concurring). The plain view doctrine is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, its owner may retain the incidents of title and possession but not privacy.

*Andreas*, at 3323–24.

The remaining requirement of inadvertence is also met in this case. While *Texas v. Brown, supra,* casts some doubts on the continuing validity of that requirement,[6] it has not been expressly rejected. Thus, we will assume that the requirement of inadvertence remains applicable. The term "inadvertence" in this context does not necessarily mean that the viewing of the evidence must be "unexpected" or "unanticipated." This Court, in interpreting "inadvertence," observed:

> We conclude, then, that "inadvertence" in this context means that the police must be without probable cause to believe evidence would be discovered until they actually observe it in the course of an otherwise-justified search. There are many times when a police officer may "expect" to find evidence in a particular place, and that expectation may range from a weak hunch to a strong suspicion. However, the Fourth Amendment prohibits either a warrant to issue or a search based on such expectation. Yet if in the course of an intrusion wholly authorized by another legitimate purpose, that hunch or suspicion is confirmed by an actual observation, the police are in precisely the same position as if they were taken wholly by surprise by the discovery.

*United States v. Hare,* 589 F.2d 1291, 1294 (6th Cir.1979). *See also Texas v. Brown, supra,* 103 S.Ct. at 1543.

We believe the *Hare* standards of "inadvertence" are met in this case because in the present case, unlike *Barry, supra,* the DEA agents did not have probable cause prior to the viewing of the bottles of pills. They had only a telephone call from an unknown airline employee with whom they had had no prior experience. The airline employee stated that she had spoken with a pharmacist over the telephone, and the pharmacist informed her that Talwin and Dilaudid were controlled substances. These facts would warrant an investigation

---

6. The plurality opinion written by Justice Rehnquist refers to the inadvertence requirement set out in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality) and comments: "Whatever may be the final disposition of the 'inadvertence' element of 'plain view,' it clearly was no bar to the seizure here." *Brown, supra,* 103 S.Ct. at 1543. Justice White, concurring in the Rehnquist opinion, reiterates his continuing disagreement with the requirement. Justice Powell, however, in his concurrence, states the view that it is not necessary to cast doubt on *Coolidge* since it has been accepted generally for over a decade. Powell concurrence at 1544.

by the DEA agents, but in light of their complete lack of information regarding the reliability of the airline employee and her information, would not provide probable cause for a warrant prior to the airport investigation.

In *Barry*, on the other hand, the information was received from the security manager at Federal Express, rather than an untrained passenger service agent. In *Barry*, the court discussed at length Federal Express' involvement with the DEA; in particular, the court discussed a memorandum prepared by the company in conjunction with the DEA regarding illegal drug shipments. The memorandum listed specific criteria to profile drug parcels. 673 F.2d at 915. The information received by the DEA agents in *Barry* was more reliable than that received by the agents in the present case. In this case, DEA Agent Heath testified that he knew when he went to the airport he would be looking for drugs but that he did not necessarily expect to find drugs, that he was "open minded about it," pending actual investigation. He, of course, was not going to the airport by accident or based on a mere hunch or unfounded suspicion, but to check out what Falwell had reported to him by phone. When he arrived, he was directed to the area where the bag or container was located, and, without his asking Falwell to open the case, she proceeded to show him what she had done and what she had seen and how she had observed the bottles containing drugs inside the bag. Without the direction or even the request of the DEA agents lawfully present, she placed the contraband in their "plain view" and the incriminating nature of the contraband was immediately apparent due to the labels on the bottles. In this latter respect, this case differs from *United States v. Walter, supra*, where the evidence had to be "tested" or observed on a screen to determine its incriminating nature. We find the requirements of the "plain view" exception to be met in this case.

There is no evidence that Republic Airlines "opened packages randomly or ... because they matched the criteria of a drug profile ..." (*Barry*, 673 F.2d at 915), nor was there any proof of a "nexus" between Republic and DEA in promoting an effort on the part of the former, and its employees, to detect illegal drug shipments. There are exigent circumstances also for Brooks' arrest in possession of the drugs at the Nashville airport.

Therefore, the judgment of the district court is accordingly AFFIRMED.

NATHANIEL R. JONES, Circuit Judge, concurring.

I fully join in the panel's conclusion that the Supreme Court's decision in *United States v. Jacobsen*, —— U.S. ——, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), requires affirmance of the convictions in this case. I write separately, however, to express my belief that the panel has needlessly passed up an opportunity to clarify the law of this Circuit as it pertains to the issues of this case.

After our initial consideration of the issues presented by this appeal, the three judges on this panel reached three vastly different opinions. The "majority" opinion concluded that the seizure of the two vials containing narcotics was justified (1) under the plain view exception to the warrant requirement; (2) because exigent circumstances were present which obviated the need to obtain a search warrant; and (3) because the defendants had no reasonable expectation of privacy in their personal luggage. The majority of the panel, however, actually rejected the first two contentions, i.e., that the seizure was justified by the plain view and exigent circumstances exception to the warrant requirement. Thus, the language in the "majority" opinion on these two issues does not even reach the level of dicta. The search was instead upheld on the sole ground that the defendants had no reasonable expectation of privacy in their luggage, a conclusion in which I still cannot concur. Now, after consideration of the petition for rehearing the panel unanimously concludes that the seizure of the narcotics did not violate the Fourth Amendment because the scope of the

agents' search did not exceed the scope of the search conducted by the private carrier. The result is that we now have four vastly different opinions in this case.

This panel had a course of action to clear up what, in my view, has become an unnecessarily muddled picture. Keeping in mind our duty to the district courts and litigants below to define the law of the Sixth Circuit as clearly as possible, the panel could have decided this case on the narrow ground set forth in the order addressing the petition for rehearing and vacated the earlier opinions rendered in this appeal. *See United Automobile, Aerospace and Agricultural Implement Workers v. NLRB,* 462 F.2d 298, 300 (D.C.Cir.1972). This would have clarified the law of this Circuit infinitely more than did the course ultimately chosen. Yet, for unexplained reasons, the panel chose to do nothing more than enter this order in addition to the three opinions already filed. I would opt for vacating our earlier opinions and disposing of the case under the rationale of *Jacobsen.*