770 F.2d 167
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
JEFFREY THOMAS BELL, DEFENDANT-APPELLANT.
 NO. 85-5004
 United States Court of Appeals, Sixth Circuit.
 7/25/85
 
 E.D.Ky.
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY
 Before: MARTIN, CONTIE and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellant-defendant, Jeffrey Bell, appeals his conviction on two drug possession charges arising from the discovery by airport employees of 50.3 grams of cocaine and approximately two pounds of marijuana in his suitcase. He initially was charged with possession with intent to distribute the two controlled substances, but plea bargained for the lesser possession charges.[1] Defendant now appeals, claiming the district court erred in denying his motion to suppress the contraband discovered by the airport employees. We find no merit to defendant's claim of error.
 
 
 2
 On May 19, 1984, defendant purchased an airline ticket at Washington National Airport for a flight to Cincinnati shortly before the flight's scheduled departure. Defendant checked one suitcase at the counter, which was tagged with a claim ticket and sent down the luggage chute to be loaded onto the U. S. Air flight for its scheduled departure.
 
 
 3
 David E. Fernandez, a U.S. Air Ramp Agent, was working the baggage chute, loading luggage into airplane bins for later transfer into the airplane luggage compartment. As Fernandez was getting ready to close out the flight to Cincinnati, a gray Samsonite bag came down and popped completely open at the end of the express chute forcing some of its contents out. The contents which fell from the bag included a plastic trash bag and a pinkish colored sweater which rested on the chute itself. As Fernandez put the articles back into the suitcase, a brownish-green substance which Fernandez recognized as marijuana fell out of the trash bag onto the chute and into the suitcase itself. After gathering up the spilled contents, Fernandez left the suitcase where it had popped open and contacted his supervisor, who in turn notified the Shift Supervisor, Richard Dunlap.
 
 
 4
 Dunlap promptly arrived on the scene; called the ticket counter to determine the suitcase's owner but was unable to obtain this information. Dunlap and Fernandez then removed the suitcase from the chute and placed it on a luggage cart so they could check the suitcase's exterior for owner identification; the suitcase, however, remained open. Dunlap then instructed Fernandez to look inside the suitcase for identification since they had found none on its exterior.[2] Inside the suitcase Fernandez then discovered a clear plastic bag containing a white powdery substance, later identified as cocaine. Dunlap followed U.S. Air's standard operating procedures and took the open suitcase to his office. Fernandez made a statement of the incident, confirming that the efforts to determine the identity of the owner of the suitcase and other actions were in accord with U.S. Air's standard operating procedure. No drug enforcement agent directed U.S. Air personnel to search the suitcase at any time.
 
 
 5
 Neal Leach, an investigator with the Federal Aviation Administration, was then informed that the suitcase in controversy had broken open accidently as it came down the baggage chute and that it apparently contained drugs. When Leach arrived the suitcase lay open in Dunlap's office with its contents exposed. Leach took several photographs and field tested a small amount of the contents within the garbage bag and within the clear plastic bag. The test results indicated both marijuana and cocaine. Leach noticed an identification tag on the inside of the suitcase which indicated the owner's name as Bell and on which a telephone number had been written. Upon completion of the field test, Leach asked another officer to contact the Drug Enforcement Agency ('DEA') to handle the matter. Once a DEA agent arrived, Leach relinquished control of the suitcase to him, but this was not until some three hours after the suitcase initially opened. Grimes, the DEA agent, transported the suitcase back to the DEA office at the police station at National Airport. At this time the DEA conducted their own chemical field test and labeled the contraband items in the suitcase after the test established that the trash bag contained marijuana and the clear plastic bag contained cocaine.
 
 
 6
 After the suitcase was tested and tagged, it was returned to Dunlap's office for an expedited trip from Washington to Cincinnati scheduled to arrive in Cincinnati at 7:36 p.m. That evening, when the suitcase arrived at the Cincinnati Airport, another DEA agent received the suitcase from a U.S. Air baggage handler. The bag was brought to the U.S. Air ticket office and Mr. Bell, who meanwhile had filed a lost baggage claim, was contacted. Once Bell identified his suitcase and left the airport with it, he was placed under arrest and the suitcase was seized. A search warrant was obtained from a federal magistrate for the Eastern District of Kentucky on Monday, two days later, after which the suitcase was searched revealing the contraband. No prior search warrant had been obtained in the District of Columbia.
 
 
 7
 United States v. Jacobsen, 104 S.Ct. 1652 (1984), presented a more compelling case for suppression on very similar facts, but the Supreme Court there held that the fourth amendment did not require suppression. Jacobsen involved the private-employee search of a damaged package sent via Federal Express. During their examination of the damaged package, the employees observed a white powdery substance originally concealed within eight layers of wrappings. To obtain the contraband, the employee had to open the package, cut through a tube sealed with silver duct tape, and then open a series of four zip-lock plastic bags. Before the first DEA agent had arrived, however, the employees replaced the contraband in its original multi-layered packaging. The DEA agent arrived at the scene, removed the bag of powder from its wrappings and field tested the powder, which was discovered to be cocaine. At no time did the DEA agents attempt to procure a search warrant. The Court in Jacobsen, nevertheless, found no constitutional basis for suppression of the contraband evidence.
 
 
 8
 In finding no fourth amendment violation, the Court noted that the amendment 'is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any government official." Id. at 1656, quoting Walter v. United States, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting).
 
 
 9
 In Jacobsen, as in the present case, the search and seizure was effected by private actions. Therefore, '[t]he additional invasions of [defendants'] privacy by the government agent must be tested by the degree to which they exceeded the scope of the private search.' Id. at 1657. The Court specifically held that the agents' reopening of the box and removing the contraband, a problem not presented in the instant case, did not impinge upon rights protected by the fourth amendment. The Court held 'it is constitutionally reasonable for law enforcement officials to seize 'effects' that cannot support a justifiable expectation of privacy without a warrant, based on probable cause to believe they contain contraband.' Id. at 1661. The Court also concluded that the field testing of the alleged contraband was not itself a fourth amendment violation.
 
 
 10
 United States v. Morgan, 744 F.2d 1215 (6th Cir. 1984), also is closely on point, again with an additional factor in favor a suppression not present in the instant case: the Morgan DEA agents had to have the suitcase reopened after it initially had been opened by the private employees. Furthermore, in Morgan the suitcase did not open on its own accord, rather an airline employee had become suspicious of the suitcase allegedly containing clothes but being sent by the expensive air express service offered by the airlines. This court, however, found suppression unwarranted. See also United States v. Barry, 673 F.2d 912 (6th Cir.), cert. denied, 459 U.S. 927 (1982); United States v. Andrews, 618 F.2d 646 (10th Cir. 1980); United States v. Rodriguez, 596 F.2d 169 (6th Cir. 1979).
 
 
 11
 On the facts here presented, we find ample and controlling authority for the district court's denial of defendant's motion to suppress. Accordingly, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 Although originally sentenced to six months' imprisonment, a $5,000 fine, and five years' probation, the district court, Bertelsman, J., granted defendant's Rule 35 motion, and modified his sentence to a relatively mild five years' probation. Defendant appeals notwithstanding the probation sentence
 
 
 [2]
 During this entire period a yellow 'CVG' tag indicating the bag's flight and destination was in plain view